# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**RECEIVED**

DEC 18 2007 *aew*

DEC 18 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

United States of America ex rel.                )
                                                )
<u>XAVIER EDWARDS,</u>                           )
(Full name and prison number)                   )
(Include name under which convicted)            )
                                                )
PETITIONER                                      )

**07CV 7196**
**JUDGE SHADUR**
**MAGISTRATE JUDGE SCHENKIER**

        vs.                                     )
                                                )
<u>DAN AUSTIN, (WARDEN)</u>                     )
(Warden, Superintendent, or authorized          )
person having custody of petitioner)            )
                                                )
RESPONDENT, and                                 )
                                                )
**(Fill in the following blank only if judgment** )
**attacked imposes a sentence to commence**      )
**in the future)**                               )
                                                )
ATTORNEY GENERAL OF THE STATE OF                )
                                                )
<u>ATTORNEY GENERAL OF ILLINOIS</u>             )
(State where judgement entered) Dai             )

Case Number of State Court Conviction:

03-CR-1430

## PETITION FOR WRIT OF HABEAS CORPUS – PERSON IN STATE CUSTODY

1.  Name and location of court where conviction entered: <u>2650 S. California Ave. Chicago Illinois,</u>
<u>60608</u>

2.  Date of judgment of conviction: <u>March 30, 2004</u>

3.  Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)
<u>Second Degree Murder, And Aggravated Battery with a Firearm.</u>

4.  Sentence(s) imposed: <u>20 Years for Murder, 10 years for Aggravated Battery with a Firearm.</u>

5.  What was your plea?  (Check one)        (A)  Not guilty        ( X )
                                            (B)  Guilty           (   )
                                            (C)  Nolo contendere  (   )

   If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

<u>                                N/A                                </u>

Revised: 7/20/05

## PART I – TRIAL AND DIRECT REVIEW

1. Kind of trial: (Check one):    Jury ( )    Judge only ( X )

2. Did you testify at trial?    YES ( X )    NO    ( )

3. Did you appeal from the conviction or the sentence imposed? YES ( X ) NO ( )

   (A) If you appealed, give the

       (1) Name of court:    <u>APPELATE COURT OF ILLINOIS FIRST DISTRICT</u>

       (2) Result:    <u>DENIED</u>

       (3) Date of ruling:    <u>JULY 24. 2006</u>

       (4) Issues raised:    <u>U.S. Const., Amend.XIV;Ill. Const. Art. I., sec.2(1970).</u>

       <u>The Court has denied Edwards equal protection of the law under the United States and</u>

       <u>Illinois Constitutions.</u>

   (B) If you did not appeal, explain briefly why not:

       <u>N/A</u>

4. Did you appeal, or seek leave to appeal, to the highest state court? YES ( X )    NO ( )

   (A) If yes, give the

       (1) Result:    <u>DINIED</u>

       (2) Date of ruling:    <u>NOVEMBER 29, 2006</u>

       (3) Issues raised:    <u>U.S. Const., Amend. XIV; Ill. Const. Art. I., sec.2 (1970).</u>

       <u>The Court has denied Edwards equal protection of the law under the United States and</u>

       <u>Illinois Constitutions.</u>

   (B) If no, why not:    <u>N/A</u>

5. Did you petition the United States Supreme Court for a writ of *certiorari*? Yes ( ) No ( X )

   If yes, give (A) date of petition: <u>N/A</u>    (B) date *certiorari* was denied:    <u>N/A</u>

2

Revised 7/20/05

## PART II – COLLATERAL PROCEEDINGS

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

   YES ( )   NO (X)

   With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

   A. Name of court: _____ N/A _____

   B. Date of filing: _____ N/A _____

   C. Issues raised: _____ N/A _____

   _____ N/A _____

   _____

   D. Did you receive an evidentiary hearing on your petition?     YES ( )   NO (X)

   E. What was the court's ruling? _____ N/A _____

   F. Date of court's ruling: _____ N/A _____

   G. Did you appeal from the ruling on your petition?     YES ( )   NO (X)

   H. (a)   If yes, (1) what was the result? _____ N/A _____

             (2) date of decision: _____ N/A _____

     (b)   If no, explain briefly why not: _____ N/A _____

I. Did you appeal, or seek leave to appeal this decision to the highest state court?

   YES ( )   NO (X)

   (a)   If yes, (1) what was the result? _____ N/A _____

             (2) date of decision: _____ N/A _____

   (b)   If no, explain briefly why not: _____ N/A _____

3

Revised: 7/20/05

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?     YES ( )          NO ( X)

    A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

        1.    Nature of proceeding      N/A

        2.    Date petition filed      N/A

        3.    Ruling on the petition      N/A

        4.    Date of ruling      N/A

        5.    If you appealed, what was the ruling on appeal?      N/A

        6.    Date of ruling on appeal      N/A

        7.    If there was a further appeal, what was the ruling ?      N/A

        8.    Date of ruling on appeal      N/A

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**?     YES ( )   NO ( X)

    A. If yes, give name of court, case title and case number: N/A

    B. Did the court rule on your petition? If so, state

        (1) Ruling: N/A

        (2) Date: N/A

4. With respect to this conviction or sentence, are there legal proceedings pending in any court, other than this petition?     YES ( )          NO ( X)

    If yes, explain: N/A

Revised: 7/20/05

## PART III- PETITIONER'S CLAIMS

(A)  Ground one;

On December, 16, 2002 16 years old Edwards attended Englewood High School with his
girlfriend, Tempest Liggons, Edwards got into an argument at school with Liggons.
Liggons accused Edwards of spreading rumors about her, and Edwards walked away from
Liggons, Liggons grabbed Edwards bookbag. Edwards responded by grabbing Liggons by
the neck , pushing Liggons against a locker, and telling Liggons to leave him alone.
Maurice Davis, Liggon's sister, approached Edwards, and Maurice Davis and Edwards
exchange words. Maurice Davis had threatened to kill Edwards, after the incident, a
securityguard took Liggon's to the office, where Liggons remained until the end of the
day. Edwards went home because Edwards was frightened that Davis was going to kill him
and later returned to the school with a gun. Edwards gave the gun to a friend, Leparis
Sutton, before he returned to the school. Davis approached Edwards and Sutton and punched
Edwards, knocking Edwards to the ground. Several other people then began beating Edwards
severely while Edwards was lying on the ground. Edwards got the gun from Sutton and
began firing. Davis and Liggons were shot, Davis later died from his gunshot wound.
and Liggons was later treated for her gunshot and released.


(B)  Ground two;

Edwards was arrested and taken to the police station on December 16, 2002 Edwards
was just 16 years old, and charged with six counts of first degree murder, two counts
of attempted first degree murder, one count of aggravated battery with a firearm,
thereafter Edwards was automatically charged as an adult under the excluded jurisdiction
provision of the juvenile court act. Edwards had just turned 16 years old and taken
to the juvenile detention center 1100 South Hamilton, Chicago, Illinois 60612.


(C)  Ground three:


Mr. Xavier Edwaeds appeared before the Honorable Judge Colleen McSweeney-Moore,
after a bench trial, the trial court found Edwards had acted under a serious provocation
because Edwards was attacked, and Edwards was acquitted of first degree murder, and
convicted of second degree murder, and aggravated battery with a firearm.

The Honorable Judge Colleen McSweeney-Moore, acquitted Edwards of first degree murder, because Edwards had acted under a serious provocation,,because Edwards was attacked, and convicted him of second degree murder. The state moved for a juvenile hearing in cook county criminal court, and the criminal court granted a hearing, and the criminal court did not considered all of the criteria required under such hearing.

(D)  Ground four:

Mr. Edwards hearing was inadequate, when the criminal court did not considered all of the criteria required under such hearing, when both the prosecutors and defense counsel failed to consider one of the necessary factors in determining whether Edwards should be sentenced as an adult. Whether there are facilities partically available to the juvenile court or the department of corrections, juvenile division, for treatment and rehabilitation of Edwards, the criminal court inadequate determination to transfer Edwards to the adult criminal court for prosecution when there was insufficient evidence of potential rehabilitation services before the criminal court at a juvenile transfer hearing.

(E)  Ground five:

Proper consideration of statutory factors means that "there must be sufficient evidence in the record as to each statutory to support the transfer order". Since Edwards was inititially charged with first degree murder, and later acquitted, in the adult criminal court, moreover, Edwards a juvenile against whom a deliquency petition was filed on the basis of second degree murder would not be subject to an adult conviction unless the state was able to establish that his case should be transferred to criminal adult court.

(F)  Ground six:

whereas, a juvenile like Xavier Edwards, who was charged with first degree murder, does not get that transfer hearing because under the excluded jurisdiction statute, there was an automatic transfer to adult criminal court, once Edwards was acquitted of first degree murder, and convicted of second degree murder, Edwards is similiarly situated to the juvenile who was initially charged under a delinquency petition with the exception that

(6)

the state has never had to show that Edwards should be subject to an adult conviction. The purpose is to provide Edwards with the safeguards that were provided to other similarly juveniles who were provided a transfer hearing by defaulting Edwards back to the juvenile court unless the state in a reverse transfer hearing can show based upon the same criteria that would be presented at the transfer hearing that Edwards should remain in adult criminal court, by failing to apply Edwards a reverse transfer hearing the criminal court denied Edwards proper due process of law protection thats provided to similarly situtated juviles equal protection of the law.

(G)  Ground seven:

Edwards was charged with first degree murder, the Honorable Judge Colleen McSweeney-Moore, acquitted Edwards of that charged, and convicted him of second degree murder, now Edwards was entitled to the full protections afforded to juveniles under juvenile deliquency act. The state moved for a juvenile hearing in adult criminal court when the court did not considered all of the criteria required doing such hearing, (1) juvenile social background check, (2) juvenile present intellectual development and psychologic maturity, (3) nature of past treatment efforts and juvenile's response to such efforts, (4) availability of programs and rehabilitation designed to treat juvenile's behavioral problems. The state failed to comply with requirements of juvenile deliquency act, Edwards was entitled to a proper hearing, since the state error in prosecuting Edwards as an adult with first degree murder to gain tactical advantage, the state was in best position to know Edwards was being deprived of protections afforded to juveniles under the juvenile delinquency act. The trial counsel did not object to prosecuting Edwards as an adult, and trial court improperly sentenced Edwards as an adult when it did not considered the factors enumerated under the juvenile deliquency act.

(H)  Ground eight:

The state was required to proceed against Edwards under the juvenile deliquency act, where Edwards committed second degree murder and was indicted for first degree murder before Edwards was acquitted, but the state automatically charged Edwards as an adult due to tactical advantage, the state could not moved to transfer Edwards to adult criminal court pursuant to the juvenile deliquency act unless (1) juvenile social background check, (2) juvenile present intellectual development and psychologic maturity, (3) nature of past treatment efforts and juvenile's response to such efforts, (4) availability of

(7)

programs and rehabilitation designed to treat juvenile's behavioral problems. And without
a adequate report a motion to sentence Edwards as an adult would violate Edwards due
process rights and deny him equal protection of the law.


   (I)  Ground nine:


Although Edwards was charged with first degree murder, before he was acquitted and
convicted of second degree murder, the state was not precluded from treating him as a
juvenile , and depriving Edwards of protection afforded to juveniles under the juvenile
deliquency act, as second degree murder were instituted before Edwards reached age 21.


   (J)  Ground ten:


Edwards was convicted of second degree murder and would probably have been reverse
back to juvenile court status after acquittal of first degree murder if the state would
have properly complied with the juvenile deliquency act statutory factors, an adequate
written social investigation report before the adult criminal court, instead the state
provided little insight into Edwards social and education functioning beyound basic
details, a pre-sentence investigation is not an adequate substitute for evidence of
the statutory factors, unlike a social investigation report used at a transfer hearing,

a pre-sentence investigation does not contain detailed information about rehabilitative
service available in the juvenile system or a detail discussion of " Edwards physical and
and mental history and condition, family situation and background, economic status,
education, occupation, personal habits,.Edwards history of delinquency or criminality",
pre-sentence investigation is insufficient evidence of the statutory factors by making
a pre-sentence inadmissible hearsay at a transfer hearing, depriving Edwards of fundamental
rights that have resulted in a denial of due process, failure to observe the fundamental
requirements of due process has resulted in instances, which might have been avoided, of
unfairness to Edwards and inadequate or inaccurate findings of fact and unfortunate
prescriptions of statutory factors.

(K)  Ground eleven:

Edwards was charged initially with first degree murder which excluded him from the
jurisdiction of the juvenile court, Edwards was acquitted of first degree murder, and
convicted of second degree murder, which placed him in the jurisdiction of the juvenile
court, the state moved for a inadequate juvenile hearing in the adult criminal court
and failed to provide statutory factors under the juvenile deliquency act, and deprived
Edwards equal protection of the law without the proper due process of the law within it's
adult criminal court jurisdiction, Edwards was convicted of second degree murder an offense
which the juvenile court have jurisdiction over, since the state charged Edwards with
first degree murder a tactical advantage to deny him the equal protection of the law
afforded to juvenile court hearings, the adult criminal court must provide every adequate
statutory factors which is afforded to juveniles who is in similarly situations and
convicted of second degree murder, that measures up to due process and fair treatment.


(L)  Ground twelve:

Judge colleen McSweeney-Moore general verdict of acquittal for first degree murder
upon the issue of not guilty to an indictment undertaking to charged first degree murder,
but convicted Edwards of second murder and not objected to after statemoved for a
inadequate juvenile hearing in the adult criminal court as insufficient in that respect,
is a bar to transfer Edwards as an adult in criminal court, Edwards whether convicted or
acquitted, is equally denied due process and deprived of the equal protection of the law
at the adult criminal court trial, when the state failed to comply with the juvenile
deliquency act initially to gain tactical advantages, the state may not thereafter
proceed except in accordance with the juvenile deliquency act, since Edwards could not
have been transfered to adult status without a adequate hearing under the juvenile
deliquency act, the equal protection clause applies when "the law lays an unequal hand on
those who have committed instrinsically the same quality of offense and (penalizes)
one and not the other."

(M)  Ground thirteen:

I11. Constitution. Art. I, sec.2 (1970). <u>DUE PROCESS AND EQUAL PROTECTION</u>
No person shall be deprived of life, liberty or property without due process
of law nor be denied the equal protection of the laws.


(N)  Ground fourteen:

U.S. Constitution., Amend. XIV; section 2. <u>DUE PROCESS AND EQUAL PROTECTION</u>
Nor shall any state deprive any person of life, liberty, or property, without
due process of law; nor deny to any person within its jurisdiction the equal
protection of the laws.


(O)  Ground fifteen:

U.S. Constitution., Amend. VI; In all criminal prosecutions, the accused shall
enjoy the right to have effective assistance of counsel for his defense.


(P)  Ground sixteen:

In absence of valid statutory factors thats adequate to support the transfer hearing
to adult court, due process clause of the Fourteenth Amendment requires that, in
respect of proceedings to determine deliquency which may result in transfer to adult,
court in which Edwards freedom is curtailed, Edwards be provided the equal protection
of the laws and effective assistance of counsel, same rule applies with respect to
statutory factors in juvenile courts as applies in adult tribunals. This case should
reverse and the cause remanded with a direction to vacate the adult conviction of
Mr. Edwards,,and either set him free or remand him to the juvenile court for disposition,
since Mr. Edwards is no longer subject to the jurisdiction of Illinois juvenile court;
the cause should be remanded with a direction to quash the adult indictment and for
such further proceeding in relation to the petitioner as justice may appertain.


**ALL ISSUES RAISED TO HIGHEST STATE COURT WHO HAVE JURISDICTION OVER THIS MATTER. .**

## PART IV – REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A) At preliminary hearing _____N/A_____

(B) At arraignment and plea _____N/A_____

(C) At trial  KEVIN MILNER 1627 Colonial Parkway Suite 302, Palatine, Illinois 60067

(D) At sentencing  KEVIN MILNER _____

(E) On appeal ____ANNE COTE FUNG Assistant Appellate Defender_____

(F) In any post-conviction proceeding _____N/A_____

(G) Other (state):  BRIAN E. KOCH Assistant Appellate Defender,,Petition for leave to appeal
to the Illinois Supreme Court.

## PART V – FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES ( X )   NO ( )

Name and location of the court which imposed the sentence: COOK COUNTY CRIMINAL COURT ADULT DIVISION  2650 S, California Ave. Chicago, IL 60608

Date and length of sentence to be served in the future  JUNE 12, 2021. Fourteen years left.

    WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: _____          ____N/A_____
          (Date)                    Signature of attorney (if any)

          **I declare under penalty of perjury that the foregoing is true
          and correct.**

          _____
          (Signature of petitioner)

          R-28955_____
          (I.D. Number)

          P.O. Box 999 Pinckneyville, Illinois 62274
          (Address)

7

Revised: 7/20/05

IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

XAVIER EDWARDS, )
Plaintiff, - PETITIONER. )
)                     Case No. 03 - CR - 1430
v. )
)
DAN AUSTIN, WARDEN ET al. )
Defendant - RESPONDENTS.

## PROOF/CERTIFICATE OF SERVICE

TO: LISA MADIGAN          TO: Michael W. DOBBINS
ATTORNEY GENERAL of Illinois    CLERK U.N. DIST. COURT
100 West RANDOlph STReet    NORTHERN DIST. EASTERN - Division of ILL
Chicago, Illinois 60601    319 South DearBorn, Chicago, IL 60601

PLEASE TAKE NOTICE that on November 19 , 2007, I have placed the
documents listed below in the institutional mail at Pinckneyville Correctional Center,
properly addressed to the parties listed above for mailing through the United States Postal
Service: PETITION for WRIT of HABEAS CORPUS.

_____

_____

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109, I declare, under penalty of
perjury, that I am a named party in the above action, that I have read the above
documents, and that the information contained therein is true and correct to the best of my
knowledge.

DATE: 11 - 19 - 07          /s/ Xavier Edwards
                            NAME: XAVIER EDWARDS
                            IDOC#: R-28955
                            Pinckneyville Correctional Center
                            P.O. BOX 999
                            Pinckneyville , IL 62274

103231

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

November 29, 2006



Office of the State Appellate Defender
1ST DISTRICT

Mr. Brian E. Koch
Assistant Appellate Defender
203 North LaSalle Street
24th Floor
Chicago, IL 60601

No. 103231 - People State of Illinois, respondent, v. Xavier
            Edwards, petitioner.  Leave to appeal, Appellate
            Court, First District.

    The Supreme Court today DENIED the petition for leave to

appeal in the above entitled cause.

    The mandate of this Court will issue to the Appellate Court

on January 4, 2007.

No.

## IN THE

## SUPREME COURT OF ILLINOIS

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Petition for Leave to Appeal from the |
| | ) | Appellate Court of Illinois, First District, |
| Respondent-Appellee, | ) | No. 04-1654 |
| | ) | |
| | ) | There heard on Appeal from the Circuit |
| -vs- | ) | Court of Cook County, Illinois, |
| | ) | No. 03 CR 1430. |
| | ) | |
| XAVIER EDWARDS, | ) | Honorable |
| | ) | Colleen McSweeney-Moore, |
| Petitioner-Appellant. | ) | Judge Presiding. |

## PETITION FOR LEAVE TO APPEAL

MICHAEL J. PELLETIER
Deputy Defender

BRIAN E. KOCH
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

No.

IN THE

SUPREME COURT OF ILLINOIS

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Petition for Leave to Appeal from the |
| | ) | Appellate Court of Illinois, First District, |
| Respondent-Appellee, | ) | No. 04-1654 |
| | ) | |
| | ) | There heard on Appeal from the Circuit |
| -vs- | ) | Court of Cook County, Illinois, |
| | ) | No. 03 CR 1430. |
| | ) | |
| XAVIER EDWARDS, | ) | Honorable |
| | ) | Colleen McSweeney-Moore, |
| Petitioner-Appellant. | ) | Judge Presiding. |

**PETITION FOR LEAVE TO APPEAL**

**PRAYER FOR LEAVE TO APPEAL**

Xavier Edwards, petitioner-appellant, hereby petitions this Court for leave to appeal,

pursuant to Supreme Court Rules 315 and 612, from the judgment of the Appellate Court, First

District, affirming his conviction for second degree murder and aggravated battery with a firearm

and his sentence of consecutive terms of 20 years and 10 years imprisonment.

-1-

**PROCEEDINGS BELOW**

The appellate court affirmed Xavier Edwards's conviction on June 15, 2006. Mr. Edwards filed a petition for rehearing on July 6, 2006. The Appellate Court denied the Petition for Rehearing on July 24, 2006. A copy of the appellate court's judgment is appended to this petition.

## COMPELLING REASONS FOR GRANTING REVIEW

Review is necessary to decide two issues of first impression: 1) whether evidence of statutorily mandated factors must be presented at a Section 5-130 transfer back hearing; and 2) whether a presentence investigation report (PSI) is adequate and admissible evidence of these statutory factors.

Only a handful of published Illinois Appellate Court decisions have these addressed these issues in the last eight years, holding that evidence of statutorily mandated factors need not be presented at a Section 5-130 transfer back hearing. *See People v. Luckett*, 295 Ill. App. 3d 342, 348, 692 N.E.2d 1345 (3rd Dist. 1998) (holding that the trial court adequately considered the availability of rehabilitative services where the factors were "mentioned to the trial judge by both the prosecutor and defense counsel" during argument); *People v. Vasquez*, 327 Ill. App. 3d 580, 586, 763 N.E.2d 779 (1st Dist. 2001) (same). *Luckett*, the watershed case on this issue, did not provide any analysis to support this holding, even though this holding undermines the legislature's attempt to create matching transfer and transfer-back hearings and violates equal protection by providing different procedural protections to similarly situated juveniles.

Juveniles charged with second degree murder, a discretionary transfer offense, are tried and sentenced as juveniles unless the State requests that they be transferred to adult criminal court. 705 ILCS 405/5-805(3) (West 2002). If the State requests transfer, then the court must hold a Section 5-805 transfer hearing at which the court must consider the nature and circumstances of the offense, the age and previous history of the juvenile, and services available for the juvenile after sentencing to determine the appropriateness of

-3-

transfer. 705 ILCS 405/5-805(3). *See also* Appendix. This Court has held that such juveniles are entitled to a transfer hearing at which the court must receive evidence on all of these factors. *People v. Clark*, 119 Ill. 2d 1, 18-19, 518 N.E.2d 138 (1987).

Even though he was convicted of second degree murder, a discretionary transfer offense, Edwards did not receive a Section 5-805 transfer hearing. Instead, Edwards's case was earlier transferred automatically to adult criminal court because he was over the age of fifteen and charged with first degree murder. 705 ILCS 405/5-130(1)(a) (West 2002). When Edwards was later acquitted of first degree murder and convicted of second degree murder, though, he had to be sentenced as a juvenile unless the trial court held a Section 5-130 transfer-back hearing and determined that adult sentencing was appropriate. 705 ILCS 405/5-130(1)(c)(ii) (West 2002).

The legislature recognized that juveniles like Edwards are similarly situated to those charged only with a discretionary transfer offense: like Section 5-805, Section 5-130 requires the trial court to consider the nature and circumstances of the offense, the age and previous history of the juvenile, and services available for the juvenile after sentencing to determine the appropriateness of transfer. 705 ILCS 405/5-130(1)(c)(ii). *See also* Appendix.

Accordingly, Edwards was now in a similar position as a juvenile charged only with second degree murder. But no evidence was presented at Edwards's transfer-back hearing about two required factors – his prior history and the availability of juvenile facilities for his rehabilitation – even though Section 5-130 requires the trial court to consider similar factors as Section 5-805. Rather, only the PSI was presented at his Section 5-130 transfer-back hearing, and the PSI was inadmissible under the strict rules

-4-

of evidence of Section 5-130. (R. 385); 705 ILCS 405/5-130(1)(c)(ii). Because no evidence was presented, the parties were left to speculate about Edwards's need for rehabilitative services and the availability of rehabilitative services. (R. 386-91). This speculative hearing would not have satisfied the requirements of *Clark* for a similar Section 5-805 transfer hearing, but the court nonetheless held that Edwards's Section 5-130 transfer-back hearing was sufficient, relying on *Luckett*. *People v. Edwards*, No. 1-04-1654 (Rule 23 Order, June 15, 2006).

Edwards's case illustrates that *Luckett* and subsequent cases relying on *Luckett* have created a two-tier system of juvenile sentencing in which juveniles facing conviction and sentencing for the same discretionary transfer offenses receive vastly different hearings on the critical issue of whether they will be sentenced as juveniles or adults. This gives the State an incentive to overcharge juveniles with automatic transfer offenses to exploit the lax evidentiary requirements of a Section 5-130 transfer-back hearing. This two-tiered system violates equal protection, and the legislature did not intend this unequal result when it established matching transfer and transfer-back proceedings.

The unjust effects of this two-tied system extend far beyond Edwards's case, affecting all juveniles acquitted of automatic transfer offenses and convicted of discretionary transfer offenses. To prevent this inequity from becoming ingrained in the criminal justice system, this Court should grant review of the Illinois Appellate Court's erroneous interpretation of Section 5-130 and determine whether the legislature intended that evidence on all statutory factors be received at Section 5-130 transfer-back hearings and whether a PSI is adequate and admissible evidence of these statutory factors.

-5-

## STATEMENT OF FACTS

Sixteen year-old Xavier Edwards was charged with first degree murder, attempted first degree murder, aggravated battery with a firearm, and aggravated discharge of a firearm arising from a shooting that occurred on December 16, 2002. (C. 14-24). Edwards was tried as an adult under the excluded jurisdiction provision of the Juvenile Court Act. 705 ILCS 405/5-130(1)(a). After a bench trial, the trial court found that Edwards had acted under a serious provocation because he was attacked, and he was convicted of second degree murder and aggravated battery with a firearm. (R. 380). Although Edwards had no prior criminal or juvenile history, he was sentenced as an adult to consecutive terms of twenty years for second degree murder and ten years for aggravated battery. (R. 418); 705 ILCS 405/5-130(1)(c)(ii).

The evidence at trial showed that on December 16, 2002, Edwards and his girlfriend, Tempest Liggons, got into an argument at school. (R. 100-01, 319-21). Liggons accused Edwards of spreading rumors about her, and as he was walking away from her, Liggons grabbed his book bag. (R. 319-21). Edwards responded by grabbing Liggons by the neck, pushing her against a locker, and telling her to leave him alone. (R. 100-01, 319-21). Maurice Davis, Liggons's sister, approached Edwards, and he and Edwards exchange words. (R. 102, 322). Edwards testified that Davis threatened to kill him, while Liggons testified that Edwards threatened to "shoot up" the school. (R. 103, 322).

After this incident, a security guard took Liggons to the office, where Liggons remained until the end of the day. (R. 103). Edwards went home because he was

-6-

frightened that Davis was going to kill him and later returned to the school with a gun. (R. 322-26). He gave the gun to a friend, LeParis Sutton, before he returned to the school. (R. 341). As he and Sutton were walking toward the school, Davis approached them and punched Edwards, knocking Edwards to the ground. (R. 161, 202, 262, 327). Several other people then began beating Edwards while he was lying on the ground. (R. 239, 263, 327-28). The fight was broken up, and Davis began to walk away. (R. 108-09, 140, 343). Edwards got his gun from Sutton and began firing. (R. 109, 329, 351-52). Davis and Liggons were shot; Davis later died from his gunshot wound. (R. 89, 110).

The trial court found that Edwards had acted under a serious provocation because he was attacked, and found Edwards guilty of second degree murder of Davis and aggravated battery with a firearm to Liggons. (R. 380).

At the sentencing hearing, the State requested that Edwards be sentenced as an adult under 705 ILCS 405/5-130(2)(c)(ii). (C. 35-36; R. 385). No evidence was presented at the hearing – neither the State nor defense counsel called any witnesses. (R. 385). The State argued that Edwards should be sentenced as an adult because at the time he committed the offense, he was sixteen years-old, he used a deadly weapon in the commission of the offense, he was a danger to the public, and it was improbable that any services in the juvenile system would benefit him. (R. 386-89). Specifically, the State argued that Edwards said in the PSI that he wanted to obtain his GED and attend college classes, which the State asserted would be available at the Illinois Department of Corrections (DOC). The State also opined that Edwards had a stable childhood and did not need any particular rehabilitative services, as opposed to juveniles from unstable families. (R. 389).

Defense counsel responded by arguing that although the offense was committed in

an aggressive manner, it was not premeditated. In addition, Edwards was only sixteen at

the time of the offense and had no prior criminal history. (R. 390). Regarding

rehabilitative services, defense counsel said, "I think although I certainly can't enumerate

various programs in institutions that are available, I know the State...has set up numerous

and various facilities and programs to deal with this type of situation because there are 16

year olds who find themselves in the situation that Xavier Edwards has." (R. 391).

Defense counsel also argued that incarceration in the DOC with hardened criminals

would be inappropriate. (R. 391). Finally, defense counsel argued that the evidence

showed that the incident occurred after serious provocation by Davis, and nothing

indicated that Edwards presented a danger to the general public. (R. 391-92).

The court ruled that Edwards should be sentenced as an adult:

"Based on the petition filed by the State, I find that the requisite statutory

factors are present and that the defendant should, in fact, be sentenced as an

adult. His premeditation is certainly evident by leaving the school and going

home to obtain a gun. Although he is sixteen years old, I must beg to differ

with you, Counsel, based on my experience, I have seen 15 and 16 year olds

commit acts such as this which are certainly, should be beyond their tender

age. Although the defendant has no previous criminal history, the fact that he

could shoot into a crowd of people indicates that the protection of the public

is necessary that he be sentenced as an adult in this case. And I will sentence

him as an adult." (R. 393).

The court then sentenced Edwards to consecutive sentences of twenty years in the

-8-

DOC for second degree murder and ten years in the DOC for aggravated battery with a firearm. (R. 417-18).

On appeal, Edwards argued in part that the trial court abused its discretion in sentencing him as adult because the trial court did not receive evidence of his prior history and the availability of rehabilitative services, instead relying on an inadequate PSI. The appellate court affirmed Edwards's sentence, holding that *Clark* was inapplicable to Section 5-130 transfer-back hearings and that the trial court's consideration of the statutory factors was adequate because both the State and defense counsel "argued to the court about juvenile treatment programs." *People v. Edwards*, No. 1-04-1654, slip op. at 3-7 (Rule 23 Order, June 15, 2006) (citing with approval *Luckett*).

**ARGUMENT**

*Overview of Transfer Provisions:*

      The legislature has adopted a complex scheme for determining whether juvenile offenders are tried and sentenced as adults or juveniles. Defendants age fifteen and over who are charged with first degree murder, such as Edwards, are automatically transferred to adult criminal court under the excluded jurisdiction provision of the Juvenile Court Act. (C. 14-24); 705 ILCS 405/5-130(1)(a). Conversely, defendants age fifteen and over who are charged with less serious offenses, including second degree murder, are tried and sentenced as juveniles unless the State requests that they be transferred to adult criminal court. 705 ILCS 405/5-805(3). If the State requests transfer, the court must hold a Section 5-805 transfer hearing to determine whether the defendant should be transferred to adult criminal court. 705 ILCS 405/5-805(3).

      Some cases, like Edwards's, fall between these two standard scenarios. When a defendant is charged with an automatic transfer offense, but is then acquitted of that offense and instead convicted of a discretionary transfer offense, the defendant must be sentenced as a juvenile unless the State requests that the defendant be sentenced as an adult. 705 ILCS 405/5-130(1)(c)(ii); *People v. Mathis*, 357 Ill. App. 3d 45, 56-57, 827 N.E.2d 932 (1st Dist. 2005). If the State requests transfer, the court must hold a Section 5-130 transfer-back hearing to determine whether the defendant should be sentenced as an adult. 705 ILCS 405/5-130(1)(c)(ii).

      Because Edwards was acquitted of first degree murder, an automatic transfer offense, and convicted of second degree murder, a discretionary transfer offense, his case

-10-

defaulted back to juvenile proceedings under Section 5-130. (R. 380); 705 ILCS 405/5-
130(1)(c)(ii). The State then filed a timely motion for a transfer-back hearing and
requested that the trial court sentence Edwards as an adult. (C. 35-36; R. 385). At this
point, for the purpose of determining the appropriateness of an adult criminal conviction
and sentence, Edwards was in the same position as a juvenile defendant who is only
charged with second degree murder, a discretionary transfer offense.

Sections 5-805 and 5-130 require a court to consider similar, if not identically
worded, factors when determining whether a juvenile charged with or convicted of a
discretionary transfer offense should be tried and sentenced as an adult. These provisions
both require the court to consider the nature and circumstances of the offense, the age and
previous history of the juvenile, and services available for the juvenile after sentencing.
*See* Appendix. The similarity of these factors is to be expected because in both cases the
court is making the same decision: whether a juvenile who is found guilty of a
discretionary transfer offense should be treated as an adult or adjudicated a delinquent.

Any transfer between juvenile and adult courts must be executed within the limits
of due process and in careful compliance with the statutory guidelines. *Clark*, 119 Ill. 2d
at 12 ("a decision to transfer a juvenile from the jurisdiction of the juvenile court to the
jurisdiction of the criminal court requires faithful adherence to the statutory requirements
governing the transfer proceedings in light of the purpose of those requirements").
Accordingly, this Court has held that at a Section 5-805 transfer hearing, proper
consideration of the statutory factors means that the trial court must "*receive sufficient
evidence on all statutory factors*, including the minor's history and the availability of
suitable treatment or rehabilitative services." *Clark*, 119 Ill. 2d at 18-19 (emphasis

-11-

added).

Section 5-130, which applies to a juvenile acquitted of an automatic transfer offense but found guilty of a discretionary transfer offense, requires the court to consider similar factors as Section 5-805. However, the Illinois Appellate Court has held that, unlike Section 5-805 transfer hearings, evidence of each factor need not be presented at Section 5-130 transfer-back hearings. Rather, *mere argument* by the parties about a factor provides sufficient consideration of that factor. *See Luckett*, 295 Ill. App. 3d at 348; *Vasquez*, 327 Ill. App. 3d at 589. The court in *Luckett* did not provide any argument in support of this unequal outcome; instead, the court merely asserted its conclusion that argument by the parties about each factor was sufficient. *Luckett*, 295 Ill. App. 3d at 348.

Although the parties in this case presented argument about each factor, the trial court did not receive evidence about Edwards's prior history and the availability of rehabilitative services at Edwards's transfer-back hearing. (R. 385-92). Moreover, the parties' arguments about these two factors were speculative – the State offered factually unsupported opinions about Strong's upbringing and need for rehabilitation, and defense counsel, unable to specify rehabilitative services available in the juvenile system, admitted that he had little knowledge of the juvenile system. (R. 386-92). The PSI (which, as argued below, was inadmissible at the Section 5-130 transfer-back hearing) did not remedy these flaws because it did not contain detailed information about Strong's need for rehabilitative services and contained no information about the availability of such services.

Given the parties' use of speculative arguments rather than admissible evidence, Edwards's Section 5-130 transfer-back hearing did not comport with *Clark*, and was thus

-12-

more perfunctory than the Section 5-805 transfer hearing that Edwards would have received had he been charged only with second degree murder. *Clark*, 119 Ill. 2d 1, 18-19. Despite this unequal result, the Illinois Appellate Court held that Edwards's transfer-back hearing was adequate. *Edwards*, No. 1-04-1654, slip op. at 3-4, 7.

*Proper Interpretation of Section 5-130(1)(c)(ii):*

The complex legislative scheme for juvenile sentencing was designed to create matching procedures for juveniles who face conviction and sentencing for the same discretionary transfer offense. The legislature intended that a juvenile convicted of or charged with a discretionary transfer offense be adjudicated delinquent whether the proceedings are held in adult or juvenile court unless the State demonstrates in a transfer or transfer-back hearing that the juvenile should be treated as an adult. *See, e.g., People v. Redmond*, 328 Ill. App. 3d 373, 376-77, 767 N.E.2d 838, 840 (2nd Dist. 2002) (noting that the primary rule of statutory interpretation is to ascertain and give effect to the intent of the legislature). The language of Section 5-130, which parallels the language of Section 5-805, shows that the legislature did not intend for transfer-back hearing to be more perfunctory than transfer hearings, but rather intended that the statutory factors in Sections 5-130 and 5-805 be analyzed in the same manner. *Luckett* and subsequent cases undercut this legislative intent. Moreover, *Luckett* and subsequent cases provide differing levels of procedural protection for similarly situated defendants, thus violating equal protection and the interpretive principle of constitutional avoidance. *See, e.g., People v. Barwig*, 334 Ill. App. 3d 738, 748, 778 N.E.2d 350 (5th Dist. 2002).

Sections 5-805 and 5-130 both direct that the trial court "shall consider" certain factors. *Compare* 705 ILCS 405/5-805(3)(b) (discretionary transfer provision indicating

-13-

that the "court shall consider" the statutory factors), *with* 705 ILCS 405/5-130(1)(c)(ii) (the transfer-back provision at issue indicating that the "court shall consider" the statutory factors). *Clark* interpreted this language in Section 5-805 to require presentation of evidence of each statutory factor. *Clark*, 119 Ill. 2d at 18-19. Section 5-130 includes language identical to the Section 5-805 language interpreted by *Clark*. 705 ILCS 405/5-130(1)(c)(ii). This identical language – "shall consider" – indicates that the legislature intended that the statutory factors in Sections 5-130 and 5-805 be analyzed in the same manner.

This legislative intent is also apparent from other similarities between the provisions. Both provisions create a hearing in which the nature of the decision is the same, the decision involves consideration of similar factors, and the decision affects similarly situated defendants. The legislature thus created Sections 5-130 and 5-805 to mirror each other in purpose and structure, indicating that the legislature intended that the statutory factors in Sections 5-130 and 5-805 be analyzed in the same manner. Sections 5-130, like Section 5-805, should therefore be interpreted to require presentation of evidence of all statutory factors.

A PSI is not an adequate substitute for evidence of the statutory factors. Unlike a social investigation report used at a Section 5-805 transfer hearing, a PSI does not contain detailed information about rehabilitative services available in the juvenile system or a detailed discussion of "the minor's physical and mental history and condition, family situation and background, economic status, education, occupation, personal habits, minor's history of delinquency or criminality." 705 ILCS 405/5-701.

The legislature recognized that a PSI is insufficient evidence of the statutory

-14-

factors by making a PSI inadmissible hearsay at a transfer hearing – evidence is admissible at a transfer-back hearing only if it would be admissible at trial. 705 ILCS 405/5-130(1)(c)(ii). By adopting formal rules of evidence at the transfer back hearing, the legislature implied its intent to create a formal and demanding proceeding in which only the most reliable evidence is received about the statutory factors. The Illinois Appellate Court has undermined this attempt by allowing speculative argument about the factors to suffice as adequate consideration.

By permitting more perfunctory transfer-back hearings, the Illinois Appellate Court has created an inequity in the procedural protections available to defendants who face conviction and sentencing for the same crime, even though in both cases the court must consider similar factors. This encourages the State to overcharge juvenile defendants with more serious automatic transfer offenses to exploit the reduced evidentiary requirements of a transfer-back hearing.

This disparity violates equal protection: defendants who are similarly situated because they face conviction for the same discretionary transfer offense nonetheless receive vastly different hearings on the critical issue of whether they will be convicted and sentenced as adults or juveniles. Such a disparity in the procedural protections provided to similarly situated defendants bears no rational relationship to a legitimate state interest. *See Jacobson v. Dept. of Public Aid*, 171 Ill. 2d 314, 322, 664 N.E.2d 1024 (1996) (defining the rational basis test). The government's interest in punishing and deterring juvenile crime is undoubtedly legitimate. 705 ILCS 405/5-101(1). *See also People v. P.H.*, 145 Ill. 2d 209, 231, 582 N.E.2d 700 (1991). But treating a juvenile convicted of a discretionary transfer offense after acquittal of an automatic transfer

-15-

offense differently from a juvenile who is charged only with the same discretionary transfer offense bears no rational relationship to this goal.

Ambiguous statutes should be interpreted to avoid constitutional difficulties, but the Illinois Appellate Court has done the opposite by creating constitutional difficulties with its interpretation of Section 5-130. *See, e.g., Barwig*, 334 Ill. App. 3d at 748. The legislature, on the other hand, recognized that juveniles acquitted of automatic transfer offenses and found guilty of discretionary transfer offenses are similarly situated to juveniles charged only with discretionary transfer offenses. Accordingly, the legislature plainly stated its intent to make transfer-back hearings at least as demanding as transfer hearings by requiring consideration of similar factors and stricter rules of evidence. In addition to violating equal protection, the Illinois Appellate Court had undermined this legislative intent.

This is not a trivial matter of statutory interpretation with limited effects -- the consequences of this erroneous interpretation of Section 5-130 are widespread, creating an unjustified two-tier system for determining whether juvenile offenders will be sentenced as juveniles or adults. This is a profoundly important determination because it affects the length of time a juvenile will be incarcerated and whether the juvenile will suffer the collateral consequences that stem from an adult criminal conviction.

Unfortunately, under the holdings in this case, *Luckett*, and *Vasquez*, this important decision is being made after a transfer-back hearing far less thorough and reliable than that envisioned by the legislature. Instead of basing this decision on detailed evidence from informed witnesses, trial courts are instead basing this decision on the speculative arguments of zealous advocates. Moreover, it is difficult for an appellate

-16-

court to determine if the trial court abused its discretion in sentencing a juvenile as an adult when no evidence has been received for the appellate court to review.

This Court has not yet interpreted the transfer-back provision of Section 5-130, and it is clear from the erroneous decisions in this case, *Luckett*, and *Vasquez* that the guidance of this Court is necessary to halt the evisceration of Section 5-130. The Illinois Appellate Court has thus far been unwilling to reverse the course of a line of unjust decisions that began with the mere conclusory holding in *Luckett*, and instead has perpetuated the errors of this decision. This unequal two-tiered system of juvenile sentencing, which was based on the flimsiest of foundations, is now becoming entrenched. The guidance of this Court is necessary to prevent the legislature's attempt to create a system of reliable, informed, and fair juvenile sentencing from being continually undermined in the future.

## CONCLUSION

Xavier Edwards, petitioner-appellant, respectfully requests that this Court grant leave to appeal.

Respectfully submitted,

MICHAEL J. PELLETIER
Deputy Defender

BRIAN E. KOCH
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

-18-

**APPENDIX**

**Text of 705 ILCS 405/5-130(1)(c)(ii)**

**Text of 705 ILCS 405/5-805(3)(b)**

**Appellate Court Decision**

**Order denying petition for rehearing**

**705 ILCS 405/5-130(1)(c)(ii) (West 2002), Excluded Jurisdiction:**

If after trial or plea the court finds that the minor committed an offense not covered by paragraph (a) of this subsection (1), that finding shall not invalidate the verdict or the prosecution of the minor under the criminal laws of the State; however, unless the State requests a hearing for the purpose of sentencing the minor under Chapter V of the Unified Code of Corrections, the Court must proceed under Sections 5-705 and 5-710 of this Article. To request a hearing, the State must file a written motion within 10 days following the entry of a finding or the return of a verdict. Reasonable notice of the motion shall be given to the minor or his or her counsel. If the motion is made by the State, the court shall conduct a hearing to determine if the minor should be sentenced under Chapter V of the Unified Code of Corrections. In making its determination, the court shall consider among other matters: (a) whether there is evidence that the offense was committed in an aggressive and premeditated manner; (b) the age of the minor; (c) the previous history of the minor; (d) whether there are facilities particularly available to the Juvenile Court or the Department of Corrections, Juvenile Division, for the treatment and rehabilitation of the minor; (e) whether the security of the public requires sentencing under Chapter V of the Unified Code of Corrections; and (f) whether the minor possessed a deadly weapon when committing the offense. The rules of evidence shall be the same as if at trial. If after the hearing the court finds that the minor should be sentenced under Chapter V of the Unified Code of Corrections, then the court shall sentence the minor accordingly having available to it any or all dispositions so prescribed.

**705 ILCS 405/5-805(3), (4) (West 2002), Transfer of Offenses:**

(3) Discretionary transfer.

(a) If a petition alleges commission by a minor 13 years of age or over of an act that constitutes a crime under the laws of this State and, on motion of the State's Attorney to permit prosecution of the minor under the criminal laws, a Juvenile Judge assigned by the Chief Judge of the Circuit to hear and determine those motions, after hearing but before commencement of the trial, finds that there is probable cause to believe that the allegations in the motion are true and that it is not in the best interests of the public to proceed under this Act, the court may enter an order permitting prosecution under the criminal laws.

(b) In making its determination on the motion to permit prosecution under the criminal laws, the court shall consider among other matters:

(i) The seriousness of the alleged offense;

(ii) The minor's history of delinquency;

(iii) The age of the minor;

(iv) The culpability of the minor in committing the alleged offense;

(v) Whether the offense was committed in an aggressive or premeditated manner;

(vi) Whether the minor used or possessed a deadly weapon when committing the alleged offense;

(vii) The minor's history of services, including the minor's willingness to participate meaningfully in available services;

(viii) The adequacy of the punishment or services available in the juvenile justice system

In considering these factors, the court shall give greater weight to the seriousness of the alleged offense and the minor's prior record of delinquency than to the other factors listed in this subsection.

(4) The rules of evidence for this hearing shall be the same as under Section 5-705 of this Act. A minor must be represented in court by counsel before the hearing may be commenced.

The text of this order may be
changed or corrected prior to the
time for filing of a Petition for
Rehearing or the disposition of
the same. /Hung

FOURTH DIVISION
Filed: June 15, 2006

No. 1-04-1654

## IN THE APPELLATE COURT OF ILLINOIS
## FIRST JUDICIAL DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, )<br><br>    Plaintiff-Appellee. )<br><br>       v. )<br><br>XAVIER EDWARDS, )<br><br>    Defendant- Appellant. ) | Appeal from the<br>Circuit Court of<br>Cook County.<br><br>No. 03 CR 1430<br><br>Honorable Colleen<br>McSweeney-Moore, Judge Presiding. |

## O R D E R

Defendant Xavier Edwards was convicted of second degree murder and aggravated battery with a firearm. He appeals his sentence of twenty years' imprisonment for second degree murder. Defendant argues that the trial court erred in sentencing him as an adult under 705 ILCS 405/5-130(1)(c)(ii)(West 2004). Further, defendant contends that remand is necessary because the hearing that he received pursuant to section 5-130 was inadequate and his counsel was ineffective. Finally, defendant argues that the twenty-year maximum sentence for second degree murder is excessive. For the reasons below, we affirm.

## I. STATEMENT OF FACTS

At trial, the evidence showed that on December 16, 2002, Xavier Edwards shot Maurice Davis and Tempestt Liggins near Englewood High School in Chicago, Illinois. The incident arose because of an earlier confrontation that occurred in the high school, during school hours, between Edwards and Liggins. In the earlier confrontation with Liggins, defendant grabbed

No. 1-04-1654

Liggins by her neck and held her against the wall for about three seconds. Liggins told her

brother, Maurice Davis, of the encounter and he and defendant "exchanged words." Defendant

then left school and went home, where he changed his clothes and retrieved a Taurus .38

revolver. He then returned to the vicinity of the school and gave the gun to his friend LaParis

Sutton.

The school day concluded at 2:42 p.m., as the students were leaving the school Davis

noticed defendant standing across the street. Davis proceeded to the side of the street where

defendant was standing. Davis punched defendant, defendant fell to the ground and Davis, with

a group of his friends, proceeded to hit or kick defendant continuously from fifteen seconds to

two minutes. At some point near the conclusion of this fight, defendant asked Sutton for the gun.

The crowd dispersed and Davis and Liggins began running away. As they were running,

defendant fired the gun, hitting Davis in the back and Liggins in the leg. Shortly thereafter,

defendant was apprehended while running toward an alley. The police retrieved a gun in nearby

bushes that was later identified as the gun used in the shooting. Davis was taken to Christ

Hospital where he was later pronounced dead. Liggins was taken to Northwestern Hospital,

where she was treated and released later that day.

Defendant was charged with six counts of first degree murder, two counts of attempted

first degree murder, one count of aggravated battery with a firearm, and one count of aggravated

discharge of a firearm. Edwards was tried as an adult pursuant to 705 ILCS 405/5-

130(1)(a)(West 2004). The trial court found that the provocation by the victim was sufficient to

mitigate the first degree murder charge to second degree murder. He was convicted of second

No. 1-04-1654

degree murder and aggravated battery with a firearm. As the second degree murder charge is not

covered by 705 ILCS 405/5-130(1)(a)(West 2004), the State requested a hearing pursuant to 705

ILCS 405/5-130(1)(c)(ii)(West 2004) to sentence defendant as an adult. The motion was granted

and on March 30, 2004, defendant was sentenced to the maximum time of twenty years'

imprisonment for second degree murder, and ten years' imprisonment for aggravated battery

with a firearm.

## II. ANALYSIS

On appeal, defendant argues that the court erred in sentencing him as an adult under 705

ILCS 405/5-130(1)(c)(ii)(West 2004) and that remand is necessary because the section 5-130

hearing was inadequate. The factors defendant presents to support the argument are: that he had

no prior criminal history, that he had just turned sixteen at the time of the offense, and that the

trial court found the decedent as the aggressor in the fight preceding the shooting. The trial court

considered all of these factors and ruled against defendant. Section 130(1)(c)(ii) provides, if

after trial defendant is found guilty of an offense not covered by section 5-130(1)(a), "unless the

State requests a hearing for the purpose of sentencing the minor under Chapter V of the Unified

Code of Corrections, the Court must proceed under Sections 5-705 and 5-710 of this Article."

705 ILCS 405/5-130(1)(c)(ii)(West 2004).

In this case, a hearing was requested by the State in a timely fashion and the hearing was

conducted by the court. In his brief, defendant cites People v. Clark, 119 Ill.2d 1, (1987), to

support his claim that the hearing was inadequate. However, Clark involved a transfer hearing

held in the juvenile court that was subject to the juvenile code sections, which are not mandated

-3-

No. 1-04-1654

by section 5-130. Section 5-130 provides that *"unless* the State requests a hearing", "the Court *must* proceed under" the Juvenile code sections. 705 ILCS 405/5-130(1)(c)(ii)(West 2004). In this case, the State did request a hearing, thus the court was not mandated to follow the requirements of sections 5-705 and 5-701 of the juvenile code. Section 5-130 does not provide detailed instructions to the court of what evidence must be used during the hearing, it only provides that the Court shall consider the following factors: "a) whether there is evidence that offense was committed in an aggressive and premeditated manner; (b) the age of the minor; (c) the previous history of minor; (d) whether there are facilities particularly available to the Juvenile Court or the Department of Corrections, Juvenile Division, for the treatment and rehabilitation of the minor, (e) whether the security of the public requires sentencing under Chapter V of the Unified Code of Corrections; and (f) whether the minor possessed a deadly weapon when committing the offense." 705 ILCS 405/5-130(1)(c)(ii)(West 2004). "No one factor is determinative nor is each factor required to be given equal weight." People v. Martin, 285 Ill.App.3d 623, 631 (1997).

Factors presented by the State in their post-trial petition were that: defendant was 16 years old at the time of the offense; he was in possession of a deadly weapon when committing the offense; he fired multiple times; he fled the scene; and he disposed of the weapon by throwing it into the bushes. The State also argued that defendant is a threat to public safety because he went home to retrieve a gun and returned to school, and after the fight he fired the gun in public. Defendant was lucky he did not hurt others on the street at that time. Additionally, the State contended that defendant would probably not benefit from any additional

No. 1-04-1654

juvenile services. The State also pointed out that as defendant was then 17 years old, he would likely be transferred to an adult facility. Also, defendant could take college courses and get a GED, which he was interested in pursuing, at the adult facility. Finally, the State concluded that defendant did not need specialized services (offered at the juvenile facilities) because of his good relationship with his parents, no alcohol or drug abuse problems, or any other similar tendencies.

The defense argued that while the offense was aggressive, there was no evidence to indicate it was premeditated. The defense argued that the fact that defendant gave the weapon to Sutton was indicative of his intent not to use it unless he had to. The defense furthered their argument by stating that defendant only asked for the weapon after the group was beating him and did not do so at any time prior to the beating. Thus, the beating was the catalyst for the use of the weapon.

Defendant was 16 years old at the time, and had no juvenile or adult criminal record. Because of the lack of criminal history, the defense argued defendant was not a threat to public safety, further his action was taken only because he was provoked. The defense went on to state that defendant could take advantage of services in the juvenile facilities, but did not state which ones.

The trial court ruled that premeditation was satisfied because defendant left school to go home and retrieve the weapon. This factor was not mitigated by defendant being 16 years old at the time of the offense. The lack of prior criminal history also failed to mitigate the shooting into a crowd of people. The court found that public safety required defendant to be sentenced as an adult.

No. 1-04-1654

Defendant argues that the trial court abused its discretion in evaluating the six factors listed above. We disagree. "Where the record shows that the trial court considered all the factors and its determination is not an abuse of discretion, then the ruling will be affirmed on appeal." People v. Luckett, 295 Ill. App.3d 342, 348 (1998). Factor one calls for the crime to be conducted in an "aggressive and premeditated manner" defendant argues that the court only considered premeditation. However, the aggressive nature of the crime was in fact conceded by defendant's counsel stating "certainly, the offense was aggressive." The court, only spoke to the premeditation but clearly also considered aggressiveness. Defendant argues that, because the court found that the victim was the aggressor, the offense was not aggressive. The court only ruled to the provocation of defendant, finding that the victim did start the fight and was the aggressor "with regard to the beating incident." However, the beating incident and the aggressive nature of the crime which defendant committed are separate. While the court found that defendant was provoked, it does not follow that the aggressive nature of the shooting is negated because of the actions of the victim. The court specifically stated "second degree murder is not justifiable homicide. Rather, it's first degree murder where a factor is used to lessen that offense."

Defendant also argues that the trial court erred in finding the crime was premeditated. However, the court did consider the actions of defendant in going home to obtain the loaded gun and bringing it to school as premeditation. Next, defendant argues that the court did not consider age as a mitigating factor. The court did consider defendant's youth as a factor, but not one significant enough to tip the balance in his favor. Defendant further argues that the lack of

No. 1-04-1654

previous criminal history was not weighted heavily enough by the court; again the court considered the factor, but believed that the nature of the crime was a substantial counterbalance to this factor.

Defendant also argues that juvenile treatment programs and rehabilitation were not considered by the court. However, the State and defense counsel both argued to the court about juvenile treatment programs. This type of consideration was deemed sufficient to meet this factor in People v. Luckett, 295 Ill. App.3d at 348.

Finally, defendant argues that the public safety finding was erroneous because the court found that the victim was the aggressor. This finding of the court was limited to the initiation of the beating and did not suggest that the victim's actions negate the public danger posed by defendant through his actions. Defendant fired a gun into a busy street in the middle of the afternoon. To further argue the point that defendant did not pose a danger, defendant's brief posits that he only aimed at Davis, indicating that he was not blindly firing and not endangering the public. However, the victim's sister, who was not an aggressor in the fight, but in fact tried to stop the victim, was also shot while fleeing the scene.

Section 5-130(c)(ii) does not indicate how each factor should be weighed. Defendant argues that the hearing itself was not adequate because no evidence was submitted to support sentencing defendant as an adult. However, there was a hearing in which both defense counsel and the State argued their points. The trial court considered and weighed the evidence in the record, and found that the evidence was sufficient. The court did in fact consider each factor in

No. 1-04-1654

relation to the evidence in the record and simply found for the State. Furthermore, defendant

had the opportunity through his counsel to submit any information deemed necessary.

Defendant next argues ineffective assistance of counsel. On appeal, this court reviews

such claims under the two-pronged test set forth in Strickland v. Washington, which our supreme

court recognized in People v. Albanese, 104 Ill. 2d 504, 526-27 (1984). Strickland v.

Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S.Ct. 2052 (1984). Under Strickland, to

establish a violation of the defendant's sixth amendment right to effective assistance of counsel,

the defendant must show: (1) that his counsel's "representation fell below an objective standard

of reasonableness;" and (2) that there is a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." Strickland, 466

U.S. at 694, 80 L.Ed. 2d at 698, 104 S.Ct. at 2068; People v. Shatner, 174 Ill.2d 133, 144 (1996).

If such a claim can be disposed of on the ground that the defendant did not suffer sufficient

prejudice, the court need not consider the first prong. People v. Pacheco, 281 Ill. App. 3d 179,

183 (1996), citing People v. Eddmonds, 143 Ill. 2d 501, 512 (1991).

Trial counsel has the right to make ultimate decisions with respect to trial strategy and

tactics, which are ordinarily not reviewable. People v. Adams, 338 Ill. App. 3d 471, 477 (2003).

If we do review an attorney's actions, we must show great deference to the attorney's decisions

as there is a strong presumption that an attorney has acted adequately. Strickland, 466 U.S. at

689, 80 L.Ed. 2d at 694-95, 104 S.Ct. at 2065. A defendant is entitled to competent, not perfect,

representation. People v. Palmer, 162 Ill. 2d 465, 475-76 (1994). The fact that an attorney

No. 1-04-1654

undertook poor strategy or that another attorney would have handled the situation differently does not in itself render the representation ineffective or inadequate. Palmer, 162 Ill. 2d at 476.

In this case the counsel represented defendant adequately through all stages of the trial. Although defendant's counsel could have presented more information at the hearing about juvenile services beneficial to defendant, there is no indication that this factor had a prejudicial effect on defendant. With respect to objecting to the inadequacy of the hearing, again defense counsel represented the factors in a way that he thought would benefit his client. The trial court weighed all the factors and determined that defendant should be sentenced as an adult. Because there is no indication that the additional information would have affected the outcome of the court's decision, we find that defendant received adequate assistance of counsel.

Finally, defendant argues that the maximum twenty year prison sentence is excessive in light of his youth, lack of criminal history, and strong potential for rehabilitation. Defendant filed a motion for the reduction of his sentence, which was denied by the trial court on May 17, 2004. When reviewing a sentencing decision, the trial court's decisions are given great weight and deference. People v. Draheim, 242 Ill. App. 3d 80 (1993). Additionally, the reviewing court "must not substitute its judgment for that of the trial court merely because it would have weighed the factors differently." People v. Fern, 189 Ill. 2d 48, 53 (2000). The trial court has great discretion in imposing sentences as long as they are within legislative limits. People v. Stambor, 33 Ill. App. 3d 324 (1975).

In the present case, the judge considered all the factors in the case and found defendant guilty of second degree murder, sentencing him to the maximum amount of time. The

No. 1-04-1654

seriousness of the crime is the most important factor in determining the appropriateness of a

sentence, not whether there are mitigating factors such as a lack of prior record. People v.

Redmond, 265 Ill. App. 3d 292 (1994).  The trial court considered the aggravating and

mitigating factors.  While defendant was young, he took a life.  He had no prior criminal record,

but in the commission of the offense he fired a gun into a crowded street.  The sentence in this

case is within the statutorily proscribed limits and, thus, must not be deemed excessive unless it

is not in accordance with the spirit and purpose of the law or is greatly disproportionate to the

nature of the offense. Fern, 289 Ill. 2d at 54.  We find this sentence is not excessive or

disproportionate and thus affirm.

### III.  CONCLUSION

Accordingly, for the aforementioned reasons, the decision of the trial court is affirmed.

Murphy, J., with Cambpell, J., Greiman, J., concurring.

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | |
| Plaintiff-Appellee. | ) | |
| | ) | |
| v. | ) | No. 1-04-1654 |
| | ) | |
| XAVIER EDWARDS, | ) | |
| | ) | |
| Defendant- Appellant. | ) | |

### O R D E R

This cause coming to be heard on the Petition for Rehearing of Defendant-Appellant,

XAVIER EDWARDS, and the court being fully advised in the premises,

IT IS HEREBY ORDERED that the Petition for Rehearing is DENIED.

_____
Justice

**ORDER ENTERED**

JUL 2 4 2006

_____
Justice

APPELLATE COURT, FIRST DISTRICT

_____
Justice

**RECEIVED**

JUL 2 4 2006

*DOCKETING DEPARTMENT*
State Appellate Defender, 1st District

No. 1-04-1654

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| -vs- | ) | No. 03 CR 1430. |
| **XAVIER EDWARDS,** | ) | Honorable |
| | ) | Colleen McSweeney-Moore, |
| Defendant-Appellant. | ) | Judge Presiding. |

**PETITION FOR REHEARING FOR DEFENDANT-APPELLANT**

MICHAEL J. PELLETIER
Deputy Defender

ANNE COTE FUNG
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR DEFENDANT-APPELLANT

No. 1-04-1654

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| -vs- | ) | No. 03 CR 1430. |
| XAVIER EDWARDS, | ) | Honorable Colleen McSweeney-Moore, |
| Defendant-Appellant. | ) | Judge Presiding. |

## PETITION FOR REHEARING FOR DEFENDANT-APPELLANT

This Court should grant rehearing because this Court relied on the dubious authority of *People v. Luckett*, 295 Ill. App. 3d 342 (3rd Dist. 1998), in holding that the trial court adequately considered all of the statutory factors in sentencing Edwards as an adult. (Slip Op. 7)[1] By following *Luckett* and refusing to apply the Illinois Supreme Court precedent of *People v. Clark*, 119 Ill. 2d 1, 518 N.E.2d 138 (1987), as argued extensively in Edwards's opening and reply briefs, this Court has denied Edwards equal protection of law under the United States and Illinois Constitutions. U.S. Const., Amend. XIV; Ill. Const. Art. I, sec.2 (1970). The equal protection clause applies when "the law lays an unequal hand on those who have committed intrinsically the same quality of offense and [penalizes] one and not the other." *Skinner v. Oklahoma*, 316 U.S.

---

[1] A copy of the Order issued on June 15, 2006 is attached to this petition as Appendix A, and cited throughout the decision as "Slip Op." with the appropriate page citations.

535, 541 (1942).

In his briefs, Edwards argued that the trial court failed to consider one of the necessary factors in determining whether he should be sentenced as an adult: whether there are facilities particularly available to the Juvenile Court or the Department of Corrections, Juvenile Division, for the treatment and rehabilitation of the minor. (Def. Br. 18; Rep. Br. 8-914-15); 705 ILCS 405/5-130. Edwards relied on the Illinois Supreme Court case, *People v. Clark*, in which the court held that a determination to transfer the minor to the adult court for prosecution was inadequate when there was insufficient evidence of potential rehabilitative services before the court. (Def. Br. 22-24; Rep. Br. 11-13); *Clark*, 119 Ill. 2d 1, 518 N.E.2d 138 (1987). Edwards acknowledged in his brief that *Clark* dealt with the transfer provision of the Juvenile Court Act ("JCA") whereas this case addresses the issue of adult or juvenile sentencing under section 5-130 after a conviction in the criminal court (previously referred to as reverse transfer), but argued extensively why *Clark* was applicable. (Def. Br. 22-24, Rep. Br. 11-12).

In its decision, this Court held that *Clark* was inapplicable because it "involved a transfer hearing held in the juvenile court that was subject to the juvenile code sections, which are not mandated by section 5-130." (Slip. Op. 3-4). The court failed to address the three arguments made by Edwards regarding *Clark's* applicability. (Def. Br. 22-23, Rep. Br. 11-12).

Instead of addressing these arguments, this Court held that the failure of counsel on both sides to present evidence of potential rehabilitative services to the trial court as required in the statute and by *Clark,* was not improper because both counsel "argued to the court about juvenile treatment programs." (Slip Op. 7). This Court relied on *People v. Luckett* for this proposition. (Slip. Op. 7); *Luckett*, 295 Ill. App. 3d 342, 692 N.E.2d 1345 (3rd Dist. 1998). In *Luckett*, the

Third District held that the trial court was deemed to have considered a statutory factor when that factor was "*mentioned* to the trial judge by both the prosecutor and defense counsel." 295 Ill. App. 3d at 348, 692 N.E.2d at 1348-49 (emphasis added). In his reply brief, Edwards raised several reasons that *Luckett* should not be followed in this case, none of which were addressed in this Court's order. (Rep Br. 3-4, 8-9).

This Court's decision to follow *Luckett* instead of *Clark* creates an equal protection problem because it permits a perfunctory section 5-130 reverse transfer hearing with less demanding evidentiary requirements than those approved by the Illinois Supreme Court in *Clark* for transfer hearings. Moreover, the inequity about what evidence *must* be presented at the different hearings undermines the legislature's attempt to create a more demanding section 5-130 reverse transfer hearing in which more restrictions are placed on what evidence can be presented.

For instance, at a transfer hearing, proper consideration of the statutory factors means that "there must be sufficient *evidence* in the record as to *each* statutory factor to support the transfer order." *Clark*, 119 Ill. 2d at 18, 518 N.E.2d at 145 (emphasis added) (holding that an expert witness's mere conclusion, unsupported by evidence, that no treatment and rehabilitative services were available was insufficient evidence of the availability of treatment and rehabilitative services); (Def. Br. 23). In contrast, in section 5-130 reverse transfer cases, the appellate courts have held that proper consideration of the statutory factors does not require the presentation of evidence on each factor. Instead, these courts have held that counsel's mere *mentioning* of the factor to the court is sufficient consideration of that factor by the court. *Luckett*. 295 Ill. App. 3d at 348, 692 N.E.2d at 1348-49 (emphasis added); see also *People v. Vasquez*, 327 Ill. App. 3d 580, 589, 763 N.E.2d 779, 786 (1st Dist. 2001) (following *Luckett*).

-3-

Moreover, a juvenile against whom a delinquency petition was filed on the basis of second degree murder would not be subject to an adult conviction unless the State was able to establish that his case should be transferred to adult court, 705 ILCS 405/5-805(3), whereas, a juvenile like Xavier Edwards, who was charged with first degree murder, does not get that transfer hearing because under the excluded jurisdiction statute, there was an automatic transfer to adult court. 705 ILCS 405/5-130(1)(a). Once Edwards was convicted of second degree murder, he is similarly situated to the juvenile who was initially charged under a delinquency petition with the exception that the State has never had to show that he should be subject to an adult conviction. *Id.* The purpose of 705 ILCS 405/5-130(1)(c)(ii) is to provide the safeguards that were provided to other similarly situated juveniles who were provided a transfer hearing by defaulting Edwards back to the juvenile court *unless* the State in a reverse-transfer hearing can show based upon the same criteria that would be presented at the transfer hearing that Edwards should remain in adult court. *Id.* (emphasis added); *People v. Mathis*, 357 Ill. App. 3d 45, 55, 827 N.E.2d 932, 940-41 (1st Dist. 2005); *People v. Brazee*, 333 Ill. App. 3d 43, 48, 775 N.E.2d 652, 656 (2nd Dist. 2002). By failing to apply the holding in *Clark* to the section 5-130 reverse transfer hearing, this Court has eviscerated the legislative protections to provide similarly situated juveniles equal protection.

This Court's holding that a section 5-130 reverse transfer hearing requires a lower evidentiary requirement than a transfer hearing encourages the State to bring more serous charges against juveniles in order to obtain an automatic transfer. (Def. Br. 23; Rep. Br. 12). In addition, whether a juvenile who receives an adult conviction for an offense such as second degree murder, depends on whether he receives a transfer hearing or a section 5-130 reverse transfer hearing.

-4-

This disparity in treatment of juveniles convicted of the same offense bears no rational

relationship to a legitimate state interest. *Jacobson v. Dept. of Public Aid*, 171 Ill. 2d 314, 322,

664 N.E.2d 1024 (1996) (defining the rational basis test). Although the State has a legitimate

interest in punishing and deterring juvenile crime, treating one minor convicted of a discretionary

transfer offense after acquittal of an automatic transfer offense differently from a minor charged

with only the discretionary transfer offense bears no relationship to this goal.

The *Luckett* court failed to provide any support for the unequal treatment of transfer and

section 5-130 reverse transfer cases, rather it merely asserted its conclusion that argument by

counsel regarding a statutory factor was sufficient. 295 Ill. App. 3d at 348, 692 N.E.2d at 1348-

49.

Furthermore, *Luckett's* holding undermines the express legislative language which

provides a more stringent procedure in section 5-130 reverse transfer cases than transfer cases.

*Compare* 705 ILCS 405/5-130(1)(c)(ii) *with* 705 ILCS 405/5-805(4). Section 5-130 requires the

court to follow the evidentiary rules of trial. 705 ILCS 405/5-130(1)(c)(ii). Section 805

however, allows probative evidence even if that evidence was incompetent for trial. 705 ILCS

405/5-805(4) (referring to the evidentiary rules in 705 ILCS 405/5-705(1)). Thus, the more

stringent statutory language and requirements in the reverse transfer statute evidence a legislative

intent to make the reverse transfer hearing more formal stringent proceeding, which the appellate

court in *Luckett* ignored.

Moreover, Edwards's argument that the court must consider all of the enumerated factors

is supported both by the statutory language of section 5-130 and cases interpreting that language.

Section 5-130 evidences a presumption in favor of juvenile sentencing when the minor is

convicted of an offense not covered under the excluded jurisdiction of the section. 705 ILCS 405/5-130(1)(c)(ii) (West 2002). The section specifically mandates that the minor is to be sentenced under the Juvenile Court Act unless the state requests and the court conducts a hearing. *Id.* This Court held in *People v. Mathis* that the hearing requirement was mandatory and could not be waived by the defendant. 357 Ill. App. 3d at 55, 827 N.E.2d at 941-42. In addition, the Second District Appellate Court held in *People v. Brazee* that when a minor is charged of an offense excluding him from the jurisdiction of the juvenile court, but is then convicted of a lesser offense the lesser offense stands as an adjudication of delinquency, not a criminal conviction. 333 Ill. App. 3d at 48, 775 N.E.2d at 656. Thus, where there is a presumption in favor of treating the minor convicted of a lesser offense as a juvenile, the State bears the burden of showing that the enumerated statutory factors support adult sentencing. That was not done here because the court failed to consider all of the factors.

Finally, this Court's order stating that "the State and defense counsel both argued to the court about juvenile treatment programs" is not reflective of counsels' statements to the court. As discussed at length in Edwards's opening and reply briefs, the State mentioned nothing about "whether there [were] facilities particularly available to the Juvenile Court or Department of Corrections, Juvenile Division for the treatment and rehabilitation of the minor." 705 ILCS 405/5-130(1)(c)(ii); (Def. Br. 26-27; Rep Br. 8). This point was also conceded by the State in its brief, in which it pointed out that "the prosecutor stated, 'there are no unique services that need to be applied to this defendant.'" (St. Br. 14). The State's argument on this point consisted of mere conjecture that the Department of Corrections ("DOC") would "most likely" be requesting Edwards's transfer to adult court, the DOC would provide Edwards with a GED program, and

Edwards didn't need rehabilitative services because he had a "wonderful childhood." (R. 388-89). This opinion by the State's counsel bears no relationship to the statutory requirement of consideration of services for the treatment and rehabilitation of the minor. (Def. Br. 26-27)

Unfortunately, defense counsel added nothing to clarify the matter because he did nothing more than guess that there must be rehabilitative services available because other juveniles have been in this situation before. (R. 391). The comments of neither the State's counsel nor defense counsel can be considered argument on the issue. Thus, the trial court failed to consider the enumerated factors, and this Court should grant rehearing.

The equal protection problem created by this Court's failure to follow the Supreme Court's *Clark* precedent was exacerbated in this case because the trial court failed to have an adequate written report before it. In his opening and reply briefs Edwards argued that because the requirements of a social investigation report mirror the enumerated statutory factors in section 5-130(1)(c)(ii), a social investigation report, rather than a pre-sentence investigation report should be required. *Compare* 705 ILCS 405/5-701 *with* 705 ILCS 405/5-130(1)(c)(ii); (Def. Br. 24-27, Rep. Br. 1-15). As further argued by Edwards, the pre-sentence investigation report provided only a cursory discussion of his social history, was repetitious, and provided little insight into his social and education functioning beyond basic details. (Def. Br. 25; Rep. Br. 12-15). A social investigation report in contrast involves the services of a juvenile probation officer, someone in a much better position to research the relevant statutory factors including the availability of appropriate juvenile rehabilitative services.

As a final aggravating factor, this Court found that Edwards's trial counsel was not ineffective despite finding that "defendant's counsel could have presented more information at

-7-

the hearing about juvenile services beneficial to the defendant. . . ." (Slip. Op. 9).  While

acknowledging that defense counsel could have done more, this holding fails to recognize

relevant authority.   Deference to trial counsel's strategic decisions is not warranted "where the

lack of mitigation evidence results from counsel's failure to properly investigate and prepare a

defense." *People v. Steidl*, 177 Ill. 2d 239, 257, 685 N.E.2d 1335, 1343 (1995); *People v. Ruiz*,

177 Ill. 2d 368, 385, 686 N.E.2d 574 (stating that "where counsel has neglected to conduct a

proper investigation into mitigating circumstances, the failure to introduce mitigating evidence

cannot be attributed to strategy").   Counsel's decision not to object to the inadequate nature of

the hearing and failure to present any evidence on the six factors listed in the reverse transfer

statute provided no direction to the court and denied Edwards his Sixth Amendment right to

effective assistance of counsel.

Thus, this Court's failure to apply the Illinois Supreme Court's precedent in *People v.*

*Clark*, and its determination to follow instead the Third District's unsupported *Luckett* decision

raises serious implications because it violates Edwards right to equal protection under the law

under both the United States Constitution and the Illinois Constitution, and this Court should

grant rehearing.

**CONCLUSION**

For the foregoing reasons, Xavier Edwards, Defendant-Appellant, respectfully requests

that this Court grant rehearing.


Respectfully submitted,


MICHAEL J. PELLETIER

Deputy Defender


ANNE COTE FUNG

Assistant Appellate Defender

Office of the State Appellate Defender

203 North LaSalle Street - 24th Floor

Chicago, Illinois 60601

(312) 814-5472


COUNSEL FOR DEFENDANT-APPELLANT

No. 1-04-1654

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 03 CR 1430. |
| | ) | |
| **XAVIER EDWARDS,** | ) | Honorable |
| | ) | Colleen McSweeney-Moore, |
| Defendant-Appellant. | ) | Judge Presiding. |

REPLY BRIEF AND ARGUMENT FOR DEFENDANT-APPELLANT

MICHAEL J. PELLETIER
Deputy Defender

ANNE COTE FUNG
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR DEFENDANT-APPELLANT

No. 1-04-1654

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 03 CR 1430. |
| | ) | |
| XAVIER EDWARDS, | ) | Honorable |
| | ) | Colleen McSweeney-Moore, |
| Defendant-Appellant. | ) | Judge Presiding. |

## REPLY BRIEF AND ARGUMENT FOR DEFENDANT-APPELLANT

In his opening brief, Xavier Edwards raised three issues regarding his sentence. First, he

argued that the trial court improperly sentenced him as an adult based on its erroneous

consideration of the statutory factors in section 5-130(1)(c)(ii). Second, he argued that the

section 5-130 hearing was insufficient as a matter of law. Third, Edwards argued that his

sentence was excessive and should be reduced in light of his age, lack of criminal record, and

rehabilitative potential. Before Edwards replies to the State's arguments, he addresses the State's

version of the facts.

Throughout its brief, the State improperly characterizes the altercation between Davis,

Edwards, and other individuals as a fight. (St. Br. 8, 13, 30). In contrast, the trial court's

findings and the evidence at trial indicate that the altercation was a beating in which Davis was

the original aggressor. (R. 327-28, 107, 139, 161, 202, 262, 263). Three witnesses testified that

-1-

Davis ran toward Edwards to initiate the fight. (R. 106, 135-36, 202, 261). In addition, Sutton

testified that after Edwards was thrown to the ground, he attempted to aid Edwards by pulling

boys off of him because Edwards was being beaten so severely. (R. 279). Hampton also testified

that approximately ten boys were beating Edwards. (R. 238). Moreover, the court specifically

found that Davis was the aggressor. (R. 378-79). The court stated, "[T]he testimony is clear that

out on the street after school, Maurice Davis was the aggressor. Perhaps his motives were

honorable in standing up for his sister and what occurred to her previously. But I think that it can

also be said that his motivation was one of retaliation. . . ." *Id.*

### I. The Court Erred in Sentencing Edwards as an Adult under Section 5-130 Because He Had No Prior Criminal History, He Had Just Turned Sixteen at the Time of the Offense, and the Court Found That the Decedent Was the Aggressor.

Edwards was entitled to be sentenced as a juvenile unless: 1) the State filed a motion to

sentence him under the criminal code, and 2) the court considered the six enumerated factors in

the statute at a hearing. 705 ILCS 405/5-130(1)(c)(ii). Contrary to the mandatory language of

section 5-130, the trial court failed to consider the six enumerated factors before sentencing

Edwards. Moreover, the trial court's determination was an abuse of discretion, given the limited

evidence before it.

Section 5-130 indicates that the trial court "shall consider" each of six enumerated

factors. 705 ILCS 405/5-130(1)(c)(ii). Edwards argued in his opening brief, that the trial court's

failure to consider each factor mandated that his case be remanded to the juvenile court for

sentencing as a juvenile. (Def's Br. 13-20). The Illinois supreme court recently addressed

whether the requirements of a statute are mandatory or directory. *People v. Robinson*, No.

97267, 2005 Ill. LEXIS 1607 (2005). If compliance with the statute's requirements is

-2-

mandatory, failure to comply requires the case to be remanded. *Id.* at *10-11. Although the use of the word "shall" in the statute is not determinative, "when the statute expressly prescribes a consequence for failure to obey a statutory provision, that is very strong evidence that the legislature intended that consequence to be mandatory." *Id.* at *14 (citing *People v. Porter*, 122 Ill. 2d 64, 84-85 (1988)).

Section 5-130 prescribes the consequence for failure to comply with its requirements: the defendant should be sentenced as a juvenile. 705 ILCS 405/5-130(1)(c)(ii) (indicating that "*unless* the State requests a hearing for the purpose of sentencing the minor" under the criminal code . . . the court *must* proceed under the juvenile court act) (emphasis added). The statute begins with the presumption that the minor is entitled to be sentenced under the Juvenile Court Act, and puts the onus on the State to show that he should be sentenced under the criminal code. *Id.* The plain language of the statute indicates that a juvenile found not guilty of an excluded offense, but guilty of a lesser offense is presumptively entitled to juvenile sentencing unless: 1) the State files a motion to sentence the juvenile as an adult, and 2) the court considers the statutory factors and finds that the minor should be sentenced as an adult. 705 ILCS 405/5-130(1)(c)(ii). Thus, the statute's requirements are mandatory, and failure to comply results in the case being remanded to the trial court for sentencing as a juvenile. *Id.*

Despite the mandatory nature of the statute, the State's response relied on *People v. Luckett*, for the proposition that even if there is no indication in the record that the trial court considered a particular factor, mention of the factor by both the prosecutor and defense counsel is sufficient to meet the statutory requirement of consideration. 295 Ill. App. 3d 342, 348, 692 N.E.2d 1345, 1348 (3rd Dist. 1998). *Luckett* should not be followed by this court for several

-3-

reasons. First, it is contrary to the mandatory language indicating that failure to consider each factor requires the minor to be sentenced under the juvenile court act. 705 ILCS 405/5-130 (1)(c)(ii); *People v. Robinson*, No. 97267, 2005 Ill. LEXIS 1607, at \*14 (2005). Second, it is contrary to the plain language of the act indicating each factor should be *considered* by the court. 705 ILCS 405/5-130(1)(c)(ii) (indicating that "[i]n making its determination, the court shall *consider* among other matters . . ."); see also, Webster's Third New International Dictionary 483 (Unabridged ed. 1986) (defining "consider" as "to reflect on; to think about with a degree of care or caution"). Third, *Luckett* cites no authority for its holding. 295 Ill. App. 3d at 348, 692 N.E.2d at 1348. Finally, *Luckett's* holding swallows the rule and threatens to render the statutory protection for minors meaningless.

The State's response next reviews the trial court's findings on the individual factors. As a preliminary matter, the State's brief argues that the court considered evidence on each factor. (St. Br. 13). A review of the transcript belies this argument however. As is discussed in more detail below, no evidence regarding the third and fourth factors was presented to the court.

In its response to the first factor, the State mis-characterizes the facts presented at trial to support its conclusion that the offense was committed in an aggressive and premeditated manner. In addition, the State ignores the statutory requirement that the offense must be both premeditated *and* aggressive, which is not supported by the court's own findings. First, the State's rendition of the facts indicates:

> Defendant returned to school at the precise time he knew school would be letting out; walked across the street as students were getting out, and a fight ensued thereafter. (R. 387). Moreover, the evidence showed that after the fight, defendant fired his handgun multiple times. (R. 386).

-4-

(St. Br. 13).

The facts presented show that the incident was not premeditated as the State suggests. For instance, the altercation between Edwards and Liggons occurred just prior to the last period of the day. (R. 99, 148, 319). After Davis approached the scene and threatened to kill Edwards for touching his sister, Edwards left school because he was scared. (R. 322-23). Edwards went home, and after thinking about the situation he changed his clothes, retrieved a gun, and returned to school to face the music. (R. 323-24). Davis's threat made it clear that he was going to retaliate against Edwards at some point; it was just a matter of time. No evidence presented at trial indicated that Edwards returned to school "at the precise time he knew school would be letting out" or that he strategically planned the timing of his return to school as the State intimates. (St. Br. 13).

Moreover, Edwards's act of giving his gun to Sutton to hold suggests that he took the gun as a protective measure only, not as part of a premeditated plan to kill Davis. Finally, the State's version omits the fact as Edwards walked across the street toward the school, Davis came running at him and initiated the beating in which several of Davis's friends beat on Edwards as he lay on the ground, which as the court found, was serious provocation. (R. 106, 135-36, 202, 261, 380).

The State goes on to argue that the offense was committed in both an aggressive and premeditated manner. (St. Br. 13-14). The State argues first that the trial court properly found premeditation based on Edwards act of retrieving a gun before returning to school. *Id.* The State fails to address the case law relied on by Edwards suggesting that his actions were not premeditated. In his opening brief, Edwards distinguished *People v. Morgan*, in which the

-5-

defendant thought about killing his grandparents several times before the night of the incident and again for some time before he shot them. 197 Ill. 2d 404, 425-26, 758 N.E.2d 813, 826 (2001). In addition, after shooting his grandmother in her front yard, the defendant in *Morgan* returned inside his home to obtain another gun. *Id.* at 426, 758 N.E.2d at 826. In addition, in *People v. Beck*, the court found evidence that the offenses were premeditated when the defendant shot five children to avoid leaving witnesses to another offense. 190 Ill. App. 3d 748, 757-58, 546 N.E.2d 1127, 1133 (5th Dist. 1989). The court stated, "the defendant and his brother certainly did not accidentally or unintentionally shoot the children, nor shoot them in a *blind rage*, as a finding of a *lack* of premeditation would suggest." *Id.* at 758, 546 N.E.2d at 1133 (emphasis added).

Here, in contrast, the trial court found that Davis was the aggressor in the beating, (R. 378, 380), and that the beating served as serious provocation for Edwards's actions. (R. 380). Thus, there is no support for the court's finding that the incident was premeditated. Furthermore, as argued in Edwards's opening brief, the court's finding that Davis was the aggressor is inconsistent with a finding that Edwards acted in an aggressive manner. (Def's Br. 14-15).

Next, the State's brief fails to address how the trial court considered his age. The State's brief indicates, "[i]n its holding the court acknowledged [his age] by stating, "although the defendant has no previous criminal history, the fact that he could shoot into a crowd of people indicates that the protection of the public is necessary that he be sentenced as an adult. . . ." (St. Br. 14) (quoting R. 33). This does not indicate how the court considered Edwards's age in making the determination to sentence Edwards as an adult.

Moreover, although evidence of his age was before the trial court, the court's only

-6-

mention of youthfulness related to juveniles in general and failed to consider how Edwards's age

impacted its decision. This is of particular concern considering the United States Supreme

Court's *Roper v. Simmons* decision in which the Court recognized three major differences

between juveniles and adults: 1) they have a lack of maturity and underdeveloped sense of

responsibility, 2) they are more vulnerable and susceptible to negative influences and outside

pressures, and 3) their character is not well-formed. 125 S. Ct. 1183, 1195 (2005). The Court

stated, "[f]rom a moral standpoint it would be misguided to equate the failing of a minor with

those of an adult, for a greater possibility exists that a minor's character deficiencies will be

reformed." *Id.*

As mentioned above, the trial court also failed to consider evidence regarding Edwards's

previous history. In its response, the state argues that the trial court considered Edwards's

"previous criminal history." (St. Br. 14). The statute requires, however, that the court consider

his "previous history." 705 ILCS 405/5-130(1)(c)(ii). In *People v. Clark,* the Illinois Supreme

Court was considering a minor's previous history under the then-enacted transfer provision. 119

Ill. 2d 1, 17, 518 N.E.2d 138, 145 (1987). The court held that "a statutorily proper evaluation of

a minor's history usually includes receipt and review of information about such factors social

adjustment, mental and physical health, school adjustment, adjustment in the family, and familial

support for any possible treatment or rehabilitation in addition to any previous involvement with

the juvenile justice system." *Id.* The trial court's brief notation that Edwards had no prior

criminal history does not meet this standard.

As discussed in detail in Edwards's opening brief, the trial court failed to consider any

evidence regarding the fourth factor: whether there were any treatment and rehabilitation

-7-

facilities available to the Juvenile Court or the Department of Corrections, Juvenile Division.
705 ILCS 405/5-130(1)(c)(ii); (Def's Br. 18, 21-27). The State argued in response that under
*Luckett*, if both prosecution and defense counsel mention a factor to the court, it is sufficient.
(St. Br. 14). Allowing the mention of a factor by both counsel to replace the presentation of
evidence and consideration by the court would have the effect of whittling away the rights of
juveniles.

      Moreover, neither side presented evidence or argument relevant to the factor. As the
State concedes in its brief, prosecuting counsel did not address whether any facilities were
available, he merely opined that Edwards did not need these services. (St. Br. 14). In addition,
defense counsel did nothing more than admit that he knew nothing about this factor. (R. 391)
(stating, " . . . I certainly can't enumerate various programs in institutions that are available. . ."). 
Moreover, *Luckett* is distinguishable from this case because in *Luckett* there was some indication
of the defendant's involvement with rehabilitative services. For instance, the court recognized
that although the defendant had been expelled from school in the eighth grade, he was
responding well in school at the juvenile detention center. *Luckett*, 295 Ill. App. 3d at 345, 692
N.E.2d at 1347. Moreover, evidence questioning the rehabilitative potential of the defendant was
introduced. Although the defendant's sole prior conviction was based on a traffic offense,
several witnesses testified to his criminal behavior such as stealing a bicycle, stealing a car, and
involvement in another drug-related shooting death. 295 Ill. App. 3d at 345, 692 N.E.2d at 1347;
see also, *People v. Vasquez*, 327 Ill. App. 3d at 589-90, 763 N.E.2d at 786-87 (following *Luckett*
and sentencing the defendant as an adult when there was evidence of his prior involvement with
rehabilitative services and evidence questioning his rehabilitative potential: the defendant was on

-8-

probation for aggravated assault when he committed the offense, he had other contacts with police involving the same co-defendants, and he was an admitted gang member).

Here, in contrast, no evidence regarding Edwards's prior contacts with or his response to prior rehabilitative services was presented. In addition, other than his possession of a weapon, he has no prior history of criminal behavior. Thus, in contrast to *Luckett* and *Vasquez* where the judge was in a better position to evaluate the potential effectiveness of rehabilitative services, the trial court here had no evidence from which it could make such a determination.

In addition, in his opening brief, Edwards argued that the court's finding on the fifth factor (whether the security of the public requires adult sentencing) was not supported by the facts or the court's findings at trial. Instead of responding to Edwards's argument, the State argues that Edwards acted violently at school and quoted the trial court's statement that "the fact that he could shoot into a crowd of people indicates that the protection of the public is necessary that he be sentenced as an adult. . . ." (St. Br. 15); (R. 393). This argument fails to consider several facts elicited at trial.

First, Liggons's own testimony indicates that she confronted Edwards twice during the school day, (R. 96-100) and according to Edwards, in the last confrontation, Liggons grabbed a book bag from his back. (R320). If Edwards was engaged in violent behavior in school, it is difficult to understand why Liggons and her friend, not Edwards, were taken to the principal's office by school authorities who were investigating the incident. (R. 103). Davis then approached the scene and threatened to kill Edwards in retaliation for pushing his sister. (R. 322). Finally, in the incident after school, Davis initiated the beating on Edwards in which Davis and several of his friends beat Edwards as he lay on the ground. (R. 103, 202, 261-62). Thus, a

-9-

finding that Edwards was a danger to the public requiring adult sentencing is not supported by all of the facts presented at trial.

Edwards concedes that the sixth factor weighs in favor of sentencing him as an adult when he used a gun in committing the offense. This factor alone, however, does not tip the scale in favor of adult sentencing considering the analysis on the five other factors. Rather, had the court properly considered all of the statutory factors, particularly in light of its own findings, it would have transferred his case to the juvenile court for sentencing. As such, Edwards requests this court to remand his case for sentencing as a juvenile.

**II. Edwards's Section 5-130 Hearing Was Inadequate When No Evidence Was Presented Regarding the Availability of Rehabilitative Services, and Section 5-130 Requires the Detailed Information Contained in a Social Investigation Report, Not the Cursory Presentence Investigation Report. Moreover, Edwards's Trial Counsel Was Ineffective When He Failed to Object to the Inadequate Hearing.**

Section 5-130 requires evidence on the six enumerated factors. 705 ILCS 405/5-130(1)(c)(ii). Edwards's argument that the social investigation report, completed by personnel familiar with the juvenile justice system, is better equipped to meet the standard set forth in section 5-130 presents an issue of first impression. Furthermore, the court here lacked a sufficient evidentiary basis to make its sentencing determination, and Edwards was prejudiced by his counsel's failure to object to the hearing.

Edwards argued in his opening brief that the section 5-130 hearing was inadequate as a matter of law because the State failed to present evidence relevant to the statutory factors beyond the presentence investigation report ("PSI"). The State's response criticizes Edwards's use of *People v. Clark*, 119 Ill. 2d 1, 518 N.E.2d 138 (1987), because *Clark* dealt with the transfer provision in contrast to this case which deals with the reverse transfer provision. (St. Br. 23). Edwards addressed this issue in his opening brief, explaining the relevance of the case. (Def's Br. 22-24). First, *Clark* was decided by the Illinois Supreme Court and interpreted identical statutory language at issue in this case. Both *Clark* and section 5-130 include language indicating that the trial court "shall consider" enumerated factors. *Compare* 119 Ill. 2d at 8, 518 N.E.2d at 141 with 705 ILCS 405/5-130 (1)(c)(ii). In addition, the statutory language at issue in *Clark* required the court to consider "the previous history of the minor" and "whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor." 119 Ill. 2d at 8, 518 N.E.2d at 141. Other than pointing out that a transfer takes place

-11-

before trial and a reverse transfer takes place after trial, the State makes no argument why the almost identical language in section 5-130 should not be treated similarly to the language in the Illinois Supreme Court's *Clark* decision.

Moreover, although the transfer factors and the weight each factor is given differs from a reverse transfer, the procedural requirements and considerations should be the same. (Def's Br. 23) (arguing that if the procedural requirements at the transfer and reverse transfer hearings were not the same, the State would be encouraged to bring more serious charges to obtain a mandatory transfer); see also Davis, Samuel Marion, *The Criminalization of Juvenile Justice: Legislative Responses to "The Phantom Menace,"* 70 MISS. L. J. 1, 29-30 (2000) (recommending that a probable cause hearing would safeguard juveniles against overzealous prosecution and ensure that cases in the criminal court actually belong there rather than ending there as a result of over-charging).

In addition to its criticism of Edwards's reliance on *Clark*, the State argues that similar language in the discretionary transfer statute and the reverse transfer statute should not be treated similarly. (St. Br. 23). The State points to individual factors of the discretionary transfer statute and additional language indicating that some factors should be weighed more heavily than others to distinguish the two statutes. (St. Br. 23-24). As Edwards indicated in his opening brief, however, the comparable language is the language in both statutes indicating that the court "shall consider" the enumerated factors. (Def's Br. 23); 705 ILCS 405/5-805(3)(b); 705 ILCS 405/5-130(1)(c)(ii).

In the State's response to Edwards's argument that a social investigation report was required, it argues that a social investigation is only required before the court determines to

-12-

adjudicate the minor a ward of the court. (St. Br. 19). The statute describing the social

investigation report specifically indicates, however, that the report is used as a tool in fashioning

the juvenile's *sentence*. 705 ILCS 405/5-701 (stating that upon court order, "a social

investigation report shall be prepared and delivered to the parties at least 3 days prior to the

sentencing hearing"); 705 ILCS 405/5-705. Both the disposition phase of a juvenile proceeding

and the sentencing phase of a criminal proceeding occur after a determination that the defendant

has committed the offense and have the effect of determining what punishment the defendant

will receive. The State fails to recognize the similarity between the disposition of a juvenile

proceeding and the sentencing of a criminal proceeding, particularly when juveniles adjudicated

delinquent and those convicted of crimes may both be committed to the Department of

Corrections. (R. 388); *People v. B.L.S.*, 202 Ill. 2d 510, 519-20, 782 N.E.2d 217, 223-24 (2002)

(holding that court must order a social investigation report for minor adjudicated an habitual

juvenile offender and noting that under section 5-705 "a social investigation report must be

prepared before sentencing any minor to the DOC. . . .").

Moreover, the requirements of the social investigation report track the requirements of

section 5-130 and the elements of the defendant's history, as outlined by the Illinois supreme

court in *Clark*. 119 Ill. 2d at 17, 518 N.E.2d at 145 (indicating that the minor's history includes:

social adjustment, mental and physical health, school adjustment, adjustment in the family,

familial support for and possible treatment or rehabilitation, and previous involvement with the

juvenile justice system). The State argued, however, that a PSI report is more comprehensive

than a social investigation report and outlined the requirements of a PSI in its brief. (St. Br. 21).

The PSI here failed to include any information about potentially available rehabilitative services

-13-

for Edwards as is required by Section 5-130. A juvenile probation officer, familiar with the available juvenile resources, is better able to make this determination than a probation officer who does not work with juveniles. In addition, a juvenile probation officer is more likely equipped to provide relevant information on the juvenile's school and family situation beyond where he lives and that he describes his relationship with his family as "pretty good" and "real good." (R. C40).

Furthermore, as the State indicates, the PSI must include information regarding the defendant's history of delinquency or criminality, physical and mental history and condition, family situation and background, economic status, education, occupation, personal habits, special resources in the community which may aid in the defendant's rehabilitation, the effect of the offense on the complainant, and the defendant's status since arrest among other factors. 730 ILCS 5/5-3-2(a). Here, the PSI included a sketchy description of Edwards's social history and educational functioning. The report indicated where Edwards lived and with whom, the names and relationships of his family members, along with a description of his relationship with his mother as "pretty good," and his relationship with his siblings as "real good." (R. C40). Regarding his educational functioning, the report indicated no details other than that he was enrolled in classes for learning disabled children in elementary and high school, and he attended a program for behaviorally challenged students for two months in 2001. (R. C41). This information alone is insufficient to meet either the statutory requirements of a PSI or the social investigation report, and certainly does not give adequate detail to make an informed decision about whether to sentence Edwards as an adult under section 5-130.

Finally, the State argues that it presented sufficient evidence at the hearing regarding the

-14-

fourth factor: the availability of rehabilitative services. (St. Br. 21). In support of this argument,

the State indicates that at the hearing the State *argued* that no services were needed and that

defense counsel *argued* that services were available. (R. 21-22). First, the State fails to

recognize the distinction between evidence and argument. Black's Law Dictionary 656, 137

(Rev. 4th ed.) (defining evidence as "[a]ny species of proof, or probative matter presented at the

trial of an issue, by the act of the parties and through the medium of witnesses, records,

documents, concrete objects etc." and defining argument as "[a]n effort to establish belief by a

course of reasoning."). Second, as discussed in Edwards's opening brief, the State's argument

that no rehabilitation services were needed was entirely conjectural and without evidentiary

support. (Def's Br. 26-27). Finally, defense counsel did not argue that rehabilitative services

were available. He surmised that because Edwards could not be the only one in this position,

services must be available. (R. 391); (Def's Br. 27).

In response to Edwards's argument that his counsel was ineffective for failing to present

any evidence, particularly regarding the fourth factor, at the hearing, or object to the cursory

nature of the hearing, the State argues that Edwards can not show that he was prejudiced by the

failure.

First, the State argues that because the fourth prong is only one of six, and all factors need

not weigh against Edwards in order to sentence him as an adult, he can show no prejudice. (St.

Br. 26). The Illinois supreme court held in *Clark,* however, that the defendant's transfer was

inadequate for two reasons. First, the court failed to consider the mandatory life sentence.

Second, and distinct from the first reason, the trial court failed to consider the defendant's

history, the availability of rehabilitative services, and the defendant's amenability to those

-15-

services, 119 Ill. 2d at 21, 518 N.E. 2d at 147, – the two factors which the court failed to consider in this case. Moreover, as Edwards discussed in his opening brief, the Illinois Supreme Court has found ineffective assistance of counsel when counsel's decision not to present mitigating evidence at sentencing was a result of his failure to conduct a proper investigation. (Def's Br. 28) (citing *People v. Ruiz*, 177 Ill.2d 368, 385-86, 686 N.E.2d 574, 582 (1997)). Furthermore, prejudice results from the court's decision to sentence Edwards as a juvenile without the benefit of consideration of each of the six factors.

Second, the State criticizes Edwards for failing to offer evidence on particular juvenile facilities. The role of the appellate court, however, is to determine whether the trial court abused its discretion in making the determination to sentence Edwards as an adult, *Clark*, 119 Ill. 2d at 143-44, 518 N.E.2d at 17, not to hear additional evidence outside the record and itself determine whether there are appropriate rehabilitative services. Sup. Ct. Rule 366(b) (limiting the scope of appellate review to errors of law or fact and indicating that review includes "any error of fact, in that the judgment or order appealed from is not sustained by the evidence or is against the weight of the evidence. . . ."). Thus, defendant is not required or permitted to bring new evidence regarding the availability of rehabilitative services before the appellate court.

In sum, a comprehensive social investigation report tracks the requirements of section 5-130 and is required before a juvenile is sentenced to the Department of Corrections. Moreover, even if this Court does not find that a Social Investigation is required, the PSI presented here was inadequate under the statute and did not provide sufficient evidentiary basis for the trial court to sentence Edwards as an adult. Furthermore, Edwards was prejudiced when the trial court failed to consider evidence on two of the six factors before sentencing him as an adult. As such,

Edwards's hearing before the trial court was legally insufficient, and his counsel's failure to

either present evidence or object to the hearing amounted to ineffective assistance of counsel.  As

such, Edwards asks this Court to remand his case for sentencing as a juvenile.

**III. The Trial Court's Twenty-Year Sentence Was Excessive Considering Edwards's Youth, Lack of Prior Criminal History, and Strong Potential for Rehabilitation.**

The trial court failed to consider Edwards's potential for rehabilitation in its sentence. The State's reliance on *People v. Simmons*, a first degree murder case, is misplaced given that Edwards is a juvenile with no prior criminal history.

In its response to Edwards's final argument, the State characterizes Davis as an innocent victim who was only trying to protect his younger sister. This characterization fails to account for the trial court's findings that he was the initial aggressor in the fight and he was acting, at least in part, out of a desire for revenge. (R. 378-79).

The trial court abuses its discretion in sentencing when it fails to consider the pertinent mitigating factors and the constitutionally-mandated objective of rehabilitation. *People v. Gibbs*, 49 Ill. App. 3d 644, 648, 364 N.E.2d 491, 494 (1st Dist. 1977). The State's response argues that the trial court did weigh the factors in mitigation. (St. Br. 31). Although he trial judge did find Edwards's lack of criminal history mitigating (R. 417), it failed to consider Edwards age or his potential for rehabilitation. See Def's Br. 32-33.

In addition, the State criticizes Edwards reliance on *People v. Smith*, 178 Ill. App. 3d 976, 533 N.E.2d 1169 (3rd Dist. 1989), primarily because the defendant in *Smith* was mentally retarded. (St. Br. 32). A careful reading of the case indicates that the court's decision to remand the case for re-sentencing was based on the trial court's failure to consider his rehabilitative potential given his age (16 years old), lack of prior criminal record, and mental retardation. *Smith*, 178 Ill. App. 3d at 985, 533 N.E.2d at 1175. Here, Edwards's age and lack of prior criminal record also indicate that he has rehabilitative potential. However, Edwards's response

-18-

to past rehabilitative services is unknown. The PSI indicated that he attended a school program for children with behavioral problems for two months, but there was no report of his response to the program or his response to the services at the Juvenile Detention Center while awaiting trial. The State's conclusion that Edwards, unlike the defendant in *Smith,* could commit another crime is nothing more than a guess.

Finally, the State's reliance on *People v. Simmons,* is misplaced. (St. Br. 31-32), *Simmons,* 342 Ill. App. 3d 185, 794 N.E.2d 995 (2nd Dist. 2003). The State points out that both the decedent in *Simmons* and Davis were shot in the back. *Id.* However, the case does not indicate that the trial court failed to consider the mitigating factors, as it did here. 342 Ill. App. 3d at 194, 794 N.E.2d at 1004. Moreover, in contrast to this case, there was no finding in *Simmons* that the defendant acted under a strong provocation, a well-recognized mitigating factor. 730 ILCS 5/5-5-3.1(a)(3); *People v. Hall,* 159 Ill. App.3d 1021, 1030-31, 513 N.E.2d 429, 435 (1st Dist. 1987) (recognizing that strong provocation is a mitigating factor when a physical assault is involved); compare *Simmons,* 342 Ill. App. 3d at 193, 794 N.E.2d at 1002-03 (indicating that the trial court convicted the defendant of first degree murder and found that the defendant's conduct in committing the murder was "accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty") with (R. 380) (indicating the trial court's finding that Edwards acted under serious provocation and finding him guilty of second degree murder). Finally, the defendant in *Simmons* was not a juvenile. *Id.* at 194, 794 N.E.2d at 1003.

The trial court abused its discretion in sentencing Edwards, a juvenile with no prior criminal history, to the maximum sentence without considering his potential for rehabilitation, particularly given the evidence that he had been involved with minimal services in the past.

Thus, Edwards asks this Court to reduce his sentence that better reflects his age, maturity, lack of criminal history, and strong potential for rehabilitation.

## CONCLUSION

For the foregoing reasons, Xavier Edwards, Defendant-Appellant, respectfully requests that this Court to remand his case for sentencing as a juvenile, or reduce his sentence, or remand his case for a new sentencing hearing.

Respectfully submitted,

MICHAEL J. PELLETIER
Deputy Defender

ANNE COTE FUNG
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois  60601
(312) 814-5472

COUNSEL FOR DEFENDANT-APPELLANT

## APPENDIX A

### LEXIS DOCUMENT

**THE PEOPLE OF THE STATE OF ILLINOIS , Appellant and Cross-Appellee, v. EMMANUEL ROBINSON, Appellee and Cross-Appellant**

**Docket No. 97267**

*2005 III. LEXIS 1607*

October 20, 2005, Opinion Filed

1 of 2 DOCUMENTS

**THE PEOPLE OF THE STATE OF ILLINOIS, Appellant and Cross-Appellee, v. EMMANUEL ROBINSON, Appellee and Cross-Appellant.**

**Docket No. 97267**

**SUPREME COURT OF ILLINOIS**

*2005 Ill. LEXIS 1607*

**October 20, 2005, Opinion Filed**

**NOTICE:** [*1] THIS DECISION IS NOT FINAL UNTIL EXPIRATION OF THE 21 DAY PETITION FOR REHEARING PERIOD.

**PRIOR HISTORY:** Appeal from the Appellate Court for the First District. *People v. Robinson, 343 Ill. App. 3d 910, 799 N.E.2d 345, 2003 Ill. App. LEXIS 1193, 278 Ill. Dec. 627 (Ill. App. Ct. 1st Dist., 2003)*

**DISPOSITION:** Appellate court judgment reversed; circuit court judgment affirmed.

**LexisNexis(R) Headnotes**

**COUNSEL:** For People State of Illinois, APPELLANT: Mr. Owen D. Kalt, Assistant State's Attorney, Chicago, IL. Hon. Lisa Madigan, Criminal Appeals Div., Chicago, IL.

For Emmanuel Robinson, APPELLEE: Ms. Jennifer Bonjean, Assistant Appellate Defender, Chicago, IL.

**JUDGES:** JUSTICE GARMAN delivered the opinion of the court. JUSTICE KILBRIDE, concurring in part and dissenting in part.

**OPINIONBY:** GARMAN

**OPINION:**

JUSTICE GARMAN delivered the opinion of the court:

Petitioner, Emmanuel Robinson, filed a *pro se* petition under the Post-Conviction Hearing Act (the Act) (*725 ILCS 5/122-1 et seq.* (West 2000)), challenging his convictions for first degree murder and attempted first degree murder. The circuit court of Cook County summarily dismissed his petition as frivolous or patently without merit. See *725 ILCS 5/122-2.1(a)(2)* (West 2000). Twelve days after the order of dismissal was entered, the clerk served the order on petitioner by certified mail. However, the Act provides that such an order "shall be served upon the petitioner by certified mail within 10 days of its entry." *725 ILCS 5/122-2.1(a)(2)* (West 2000). Thus, service was two days late. Nevertheless, petitioner timely filed a notice of appeal. The [*2] appellate court reversed and remanded. *343 Ill. App. 3d 910, 799 N.E.2d 345, 278 Ill. Dec. 627.* The appellate court held the Act's 10-day service provision is mandatory, and therefore the clerk's failure to timely serve petitioner required that the petition be remanded for further proceedings. *343 Ill. App. 3d at 921.* The State sought leave to appeal, which we allowed. See *177 Ill. 2d R. 315.* Petitioner seeks cross-relief, arguing the circuit court erred in dismissing his petition as frivolous or patently without merit.

BACKGROUND

Petitioner was convicted after a bench trial of first degree murder, attempted murder, and aggravated battery with a firearm. The charges stemmed from a shooting in which Tommy McNeal was killed and Tommy's brother, Raleigh McNeal, was wounded. At trial, Raleigh testified that early in the afternoon of July 10, 1997, he and Tommy were

standing in front of their mother's house at 5656 South Paulina in Chicago, near the corner of Paulina and 57th. Raleigh was selling heroin on the corner that day, but Tommy was not. A car pulled up, and petitioner, his codefendant Arthur Wilson, known as "Ton Ton," and a man named Troy got out. Raleigh had known petitioner for three [*3] or four years because they lived in the same neighborhood, and had known Wilson for six to eight months. Petitioner told Raleigh and Tommy they had to stop selling drugs on that corner. Tommy replied that they were not selling drugs, and they would not leave the corner because they lived there. Petitioner replied that if they did not stop selling drugs on that corner he would return after dark and "air out"-which Raleigh understood to mean kill-everyone he found there. Petitioner, Wilson and Troy then left.

That evening at about 9 p.m. Raleigh and Tommy were standing on the same corner. Raleigh noticed a light attached to a motion sensor at 5650 Paulina come on. This caused him to look toward the gangway between that house and his sister's house, at 5652 Paulina, because he knew that when the light came on someone was moving either behind the house or in the gangway. He saw three men dressed in black, wearing black skull caps, come out of the gangway onto Paulina and begin walking south toward him. Raleigh identified petitioner and his codefendant Wilson as two of the men. He testified he could not identify the third man. He noticed all three carried guns. At that point, the three [*4] began shooting and Raleigh turned and ran, trying to reach shelter behind a tree near the corner. He was hit in the left leg and fell. As he was lying on the ground, he noticed that Tommy had also been shot and appeared to be dead.

Shortly thereafter police officers arrived at the scene. Over petitioner's objection, Raleigh testified he told the responding officers that petitioner and "Ton Ton" shot him. Raleigh was then taken to a hospital, where he received treatment and learned that Tommy was dead. After about three hours he left the hospital and went home. On July 13 he went to the police station to view two lineups, in which he identified petitioner and his codefendant Wilson.

A second eyewitness, Raleigh and Tommy's sister Claire McNeal, described the shooting in substantial agreement with Raleigh's testimony. Claire had not been present during the confrontation earlier in the day, nor did she know petitioner or Wilson prior to the shooting. Like Raleigh, she identified petitioner and Wilson as shooters in lineups conducted on July 13.

The trial court found petitioner guilty of first degree murder, attempted first degree murder, and aggravated battery with a firearm. Petitioner [*5] was sentenced to concurrent terms of 45 years for the murder and 20 years each for attempted murder and aggravated battery. On direct appeal, the appellate court vacated the aggravated battery conviction, based on the one act, one crime doctrine, and affirmed the other convictions and sentences. *People v. Robinson*, No. 1-99-2348 (2001) (unpublished order under *Supreme Court Rule 23*). While the direct appeal was pending, petitioner filed a *pro se* postconviction petition in which he alleged, on numerous grounds, that his trial counsel and appellate counsel had been ineffective, that his trial was unfair, and that he was not proven guilty beyond a reasonable doubt.

In reversing the summary dismissal of defendant's petition, the appellate court noted that *section 122-2.1(a)(2)* of the Act provides that an order of dismissal "shall" be served within 10 days of entry and that "shall" is generally indicative of mandatory intent. *343 Ill. App. 3d at 919-20*. The court then noted that in *People v. Porter* this court had addressed a different timing requirement in *section 122-2.1*, namely, that the circuit court shall enter an order of dismissal within 30 (now 90) days, [*6] and held it to be mandatory. *343 Ill. App. 3d at 920*, citing *People v. Porter, 122 Ill. 2d 64, 85, 521 N.E.2d 1158, 118 Ill. Dec. 465 (1988)*. The court emphasized that *Porter* distinguished the timing requirement from another requirement in *section 122-2.1*, which purported to require the court to issue a written order with findings of fact and conclusions of law. *343 Ill. App. 3d at 920-21*, quoting *Porter, 122 Ill. 2d at 82*. *Porter* reasoned that the written-order requirement intruded upon the judicial function of the court, and therefore to read the written order requirement as mandatory would violate the doctrine of separation of powers. *343 Ill. App. 3d at 920-921*, citing *Porter, 122 Ill. 2d at 82*. Applying *Porter*, the appellate court reasoned that, because the 10-day service requirement involves a ministerial function, not a judicial function, and because the 10-day service requirement appears within the same section of the Act as the 90-day requirement, the 10-day requirement is also mandatory. *343 Ill. App. 3d at 921*. Because it is mandatory, the court concluded, the clerk's failure to [*7] comply required the petition be remanded for further proceedings. *343 Ill. App. 3d at 921*.

ANALYSIS

I. The State's Appeal

The pertinent part of *section 122-2.1* of the Act provides as follows:

"If *** the court determines the petition is frivolous or is patently without merit, it shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision. Such order of dismissal is final and shall be served upon the petitioner by certified mail within 10 days of its entry." *725 ILCS 5/122-2.1(a)(2)* (West 2000).

Before this court, petitioner stresses the fact that the statute provides the clerk "shall" serve him within 10 days, and points out that "shall" generally indicates the legislature's intent to impose a mandatory obligation. See *People v. O'Brien, 197 Ill. 2d 88, 93, 754 N.E.2d 327, 257 Ill. Dec. 669 (2001).*

In this case, however, there is no genuine dispute that the 10-day notice requirement has the force of a command and that it imposed a mandatory obligation on the clerk. We do not understand the State to argue that the legislature meant merely to grant [*8] the clerk permission to effect service within 10 days, if the clerk so chooses, or that the legislature only meant to suggest it might be a good idea to effect service within 10 days. In short, there is no dispute that "shall" means shall, and therefore the clerk failed to do something that was obligatory. The issue is the *consequence* of the clerk's failure.

It is entirely understandable why petitioner would argue as he does. The issue in this case can be stated as whether the statute is mandatory or directory. That question is easily confused with the separate question whether statutory language is mandatory or permissive. Because the word "mandatory" appears in both, it is natural to suppose they are really the same question and that the words "permissive" and "directory" must be synonyms. However, as courts have occasionally pointed out, they are not the same question at all.

For example, in *Morris v. County of Marin, 18 Cal.3d 901, 559 P.2d 606, 136 Cal.Rptr. 251 (1977),* the question was whether a California statute, which provided that every county that issues building permits "shall" require all applicants for such permits to file a certificate of worker's [*9] compensation insurance, qualified as a "mandatory duty" within the meaning of a second California statute, which provided that governmental entities could be liable for damages due to breach of certain mandatory duties. The *Morris* court carefully distinguished that question from the separate question whether the statute was mandatory or directory:

"Defendant simply confuses the 'mandatory duty' terminology of [the second statute] with the entirely distinct and unrelated legal doctrine pertaining to 'directory' or 'mandatory' provisions. *** The term 'mandatory' refers to an obligatory duty which a governmental entity is required to perform, as opposed to a permissive power which a governmental entity may exercise or not as it chooses. By contrast, the 'directory' or 'mandatory' designation does not refer to whether a particular statutory requirement is 'permissive' or 'obligatory,' but instead simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates." *Morris, 18 Cal.3d at 908, 559 P.2d at 610-11, 136 Cal.Rptr. at 255-56.* [*10]

See also *State v. $ 435,000, 842 S.W.2d 642, 644, 36 Tex. Sup. Ct. J. 38 (Tex. 1992)* (where the defendant in a forfeiture proceeding argued that the judgment was void due to violation of a statute requiring that a hearing in such proceedings "shall" be set within 30 days of filing, "the issue is not whether 'shall' is mandatory, but what consequences follow a failure to comply"); *City of Boston v. Barry, 315 Mass. 572, 577, 53 N.E.2d 686, 688-89 (1944)* (where a property owner attempting to redeem property by paying delinquent taxes argued she was not liable to pay taxes for years in which the collector failed to comply with a statute requiring that he "shall" certify certain taxes by September 1, the fact that the statute is mandatory rather than permissive is "beside the point. *** The real question is whether the Legislature intended *** that if certification should not be timely, the tax should be uncollectible on redemption"). In sum, the mandatory-permissive dichotomy concerns whether the language of a statute has the force of a command that imposes an obligation, or is merely a grant of permission or a suggestion, which therefore imposes no obligation. The mandatory-directory [*11] dichotomy, which is at issue in this case, concerns the consequences of a failure to fulfill an obligation.

The United States Supreme Court recently underscored this distinction. See *Barnhart v. Peabody Coal Co., 537 U.S. 149, 154 L. Ed. 2d 653, 123 S. Ct. 748 (2003).* In *Barnhart,* the statute at issue provided that the Commissioner of

Social Security "shall," by October 1, 1993, assign each retired coal miner to an existing coal mining company, which company would then be responsible for funding the miner's pension benefits. *Barnhart, 537 U.S at 152, 154 L. Ed. 2d at 661, 123 S. Ct. at 752*, citing *26 U.S.C. § 9706(a) (2000)*. The Commissioner assigned some miners after October 1, 1993. Several mining companies brought suit alleging the late assignments were void. The Court explained that "it misses the point simply to argue that the October 1, 1993, date was 'mandatory,' 'imperative,' or a 'deadline,' as of course it was ***. *** The failure to act on schedule merely raises the real question, which is what the consequences of tardiness should be." *Barnhart, 537 U.S. at 157, 154 L. Ed. 2d at 664-65, 123 S. Ct. at 754*. [*12] Similarly, in this case the 10-day service provision is a deadline, and the real question is the consequence of the clerk's tardiness. It misses the point to stress that the legislature used "shall" and that "shall" indicates intent to impose a mandatory obligation.

We acknowledge that this court helped create the situation we are now trying to address. We have spoken as if the mandatory-permissive dichotomy were the same as the mandatory-directory. See, *e.g., People v. Reed, 177 Ill. 2d 389, 393, 686 N.E.2d 584, 226 Ill. Dec. 801 (1997)* ("Legislative use of the word 'may' is generally regarded as indicating a permissive or directory reading, whereas use of the word 'shall' is generally considered to express a mandatory reading"). Moreover, we have cited the rule that the word "shall" generally indicates mandatory intent, even though the mandatory-directory dichotomy was at issue, not the mandatory-permissive. See, *e.g., Andrews v. Foxworthy, 71 Ill. 2d 13, 21, 373 N.E.2d 1332, 15 Ill. Dec. 648 (1978)* (citing the rule in support of invalidating taxes for failure to timely publish assessments); *People v. Youngbey, 82 Ill. 2d 556, 562, 413 N.E.2d 416, 45 Ill. Dec. 938 (1980)* [*13] (citing the rule in support of vacating criminal sentences imposed in violation of a statutory command that the circuit court consider a written presentence report prior to sentencing).

However, in no case regarding the mandatory-directory dichotomy has "shall" controlled the outcome. For example, in *Andrews*, we considered the purpose of the statute and stressed that the purpose of timely publication of tax assessments is to enable each taxpayer to determine whether his assessment is disproportionate or excessive. *Andrews, 71 Ill. 2d at 22-23*. In *Youngbey*, instead of relying on the word "shall," we relied on the fact that the statute required that a "defendant shall not be sentenced before" the court considered a presentence report. *Youngbey, 82 Ill. 2d at 561-62*, quoting Ill. Rev. Stat. 1979, ch. 38, par. 1005-3-1. Accordingly we may now clarify that whenever, as in this case, the mandatory-directory dichotomy is at issue the word "shall" is not determinative. On the other hand, when the issue is whether the force of the statutory language is mandatory or permissive, then "shall" does usually indicate the legislature intended to impose a [*14] mandatory obligation. See *O'Brien, 197 Ill. 2d at 93*.

With that clarification in mind, we return to the merits. Whether a statutory command is mandatory or directory is a question of statutory construction, which we review *de novo. People v. Ramirez, 214 Ill. 2d 176, 179, 824 N.E.2d 232, 291 Ill. Dec. 656 (2005)*. The answer is a matter of legislative intent. *Pullen v. Mulligan, 138 Ill. 2d 21, 46, 561 N.E.2d 585, 149 Ill. Dec. 215 (1990)*. The statute's language is the best evidence of legislative intent. *Pullen, 138 Ill. 2d at 46*. Accordingly, when the statute expressly prescribes a consequence for failure to obey a statutory provision, that is very strong evidence the legislature intended that consequence to be mandatory. See *Porter, 122 Ill. 2d at 84-85; Pullen, 138 Ill. 2d at 46*.

In this case, the State claims the statute does not specify a consequence for the clerk's tardiness. The petitioner replies that the consequence is specified in *section 122-2.1(b)*, which provides that if a petition "is not dismissed pursuant to this Section," it must be docketed for further consideration. See *725 ILCS 5/122-2.1(b)* [*15] (West 2000). Thus, at issue is whether the clerk's tardiness means the petition in this case was "not dismissed pursuant to this section."

On this point, each party relies on *Porter*. As the State points out, *Porter* held that failure to dismiss in a written order with findings of fact and conclusions of law does not trigger *section 122-2.1(b)*, despite the fact that *section 122-2.1(a)(2)* provides that the court "'shall dismiss the petition in a written order.'" *Porter, 122 Ill. 2d at 84*, quoting Ill. Rev. Stat., 1984 Supp., ch. 38, par. 122-2.1(a). However, as petitioner points out, *Porter* also held that failure to enter an order of dismissal within the time specified in *section 122-2.1(a)* does trigger *section 122-2.1(b)*, so that an untimely dismissal is void. *Porter, 122 Ill. 2d at 84*. To explain why these two holdings do not conflict, *Porter* reasoned that if the requirement regarding the content of the court's order were read to be mandatory, it would violate the constitutional doctrine of separation of powers. *Porter, 122 Ill. 2d at 85-86*, citing *People v. Davis, 93 Ill. 2d 155, 442 N.E.2d 855, 66 Ill. Dec. 294 (1982)*. [*16]

Applying *Porter* to this case, the appellate court reasoned that effecting service is a ministerial act, not a judicial act. *343 Ill. App. 3d at 921*. We agree. Because effecting service is not a judicial act, *Porter's* holding that the legislature may not mandate the content of a judicial order is inapposite. However, contrary to the appellate court, it does not

follow that *Porter*'s second holding--that an untimely dismissal is void--controls this case. See *Porter, 122 Ill. 2d at 84.* This case involves untimely service, not untimely dismissal. Although untimely dismissal does trigger *section 122-2.1(b)*, it does not follow that timely dismissal followed by untimely service does.

We find *section 122-2.1(b)* to be ambiguous as to whether untimely service triggers the express consequence that the petition must be docketed for further consideration. A statute is ambiguous if it permits more than one reasonable interpretation. *Reda v. Advocate Health Care, 199 Ill. 2d 47, 55, 765 N.E.2d 1002, 262 Ill. Dec. 394 (2002).* On one hand, it is reasonable to suppose the legislature meant that a dismissal is "pursuant to this section," notwithstanding any [*17] subsequent error by the clerk, provided it is dismissed under the authority granted to the court by *section 122-2.1(a).* Unlike *Porter,* the timely dismissal in this case was within the court's statutory grant of authority to examine and summarily dismiss a petition within the specified time. On the other hand, it is also reasonable to suppose that a dismissal is not "pursuant to this section" if any of the legitimate requirements of "this section," including timely service, go unfulfilled. The ambiguity arises from the fact that "pursuant to" may mean either "as authorized by" or "in compliance with." Black's Law Dictionary 1272 (8th ed. 2004).

Having found the statute ambiguous on the point at issue, we may consider other evidence to determine what the legislature intended. *People v. Ross, 168 Ill. 2d 347, 352, 659 N.E.2d 1319, 213 Ill. Dec. 672 (1995).* In particular, we may consider the purpose of the statute. See *Reda, 199 Ill. 2d at 55.* It has long been held that "statutory requisitions" directed to government officials "'designed to secure order, system and dispatch in proceedings'" are usually directory rather than mandatory, but if they "'are intended for [*18] the protection of the citizen, *** and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory.'" *People v. Jennings, 3 Ill. 2d 125, 127, 119 N.E.2d 781 (1954),* quoting *French v. Edwards, 80 U.S. (13 Wall.) 506, 511, 20 L. Ed. 702, 703 (1872).* In other words, commands to government officials regarding procedure are usually directory, but there is an exception when the official's failure to follow the procedure will "generally" injure the right the procedure was designed to protect. For example, in *Jennings* we held that a provision requiring publication of property tax assessment rolls was mandatory rather than directory because, without publication, taxpayers would generally be unable to enforce their right not to be taxed excessively or disproportionately. *Jennings, 3 Ill. 2d at 128.*

In this case, the 10-day service provision is a procedural command to the clerk meant to secure "dispatch in proceedings" for the sake of protecting the petitioner's right to appeal. See *People v. Adams, 338 Ill. App. 3d 471, 474, 788 N.E.2d 252, 272 Ill. Dec. 948 (2003).* While the right to appeal [*19] might be injured by untimely service in a given case, there is no reason to believe that it generally would be. The right to appeal is preserved if notice of appeal is filed within 30 days. 188 Ill. 2d R. 606. Because 30 days minus 10 leaves 20, and because it is not difficult to prepare a notice of appeal, there are likely to be many cases, like the case at bar, in which the right to appeal is unaffected by untimely service. We conclude that a violation of the 10-day service requirement is not so likely to prejudice the right to appeal as to require an exception to the general rule that procedural commands to government officials are directory.

The passage from *French* which we cited in *Jennings* states a second exception to the general rule that procedural commands to government officials are directory. Statutory provisions "'designed to secure order, system and dispatch in proceedings *** are not usually regarded as mandatory unless accompanied by negative words importing that the acts required shall not be done in any other manner or time.'" *Jennings, 3 Ill. 2d at 127,* quoting *French, 80 U.S. (13 Wall.) at 511, 20 L. Ed. at 703.* We applied [*20] this exception, for example, in *In re Application of the County Collector, 132 Ill. 2d 64, 74-75, 547 N.E.2d 107, 138 Ill. Dec. 138 (1989).* That case concerned an ordinance of the City of Aurora, governing appropriations ordinances, which provided, "No such ordinance shall take effect until ten (10) days after it is *** published ***.'" (Emphasis omitted.) *In re Application of the County Collector, 132 Ill. 2d at 71,* quoting Aurora, Ill., Code of Ordinances § 2-28. We concluded the negative language established the provision was mandatory, so that failure to publish with the required lead time voided the appropriations ordinance and therefore invalidated the tax levy based on the appropriation. *In re Application of the County Collector, 132 Ill. 2d at 75-76.*

In this case, the statute does not include negative words indicating that no dismissal shall occur or become effective unless the petitioner is timely served. The statute as written indicates the legislature intended that an order summarily dismissing the petition would be entered first, with timely service to follow. Had it intended a different arrangement, the legislature could easily have [*21] written, for example, that no summary dismissal shall be entered unless the clerk timely serves notice of the court's intent to dismiss, or that no dismissal shall become a final order unless there is timely service. We conclude the "negative language" exception does not apply to this case. Nor is there any other exception that applies to this case to prevent application of the general rule that procedural commands to government officials are

directory.

In sum, the statute expressly provides that petitions "not dismissed pursuant to this Section" must be docketed for further consideration. *725 ILCS 5/122-2.1(b)* (West 2000). However, the statute is ambiguous as to whether the clerk's failure to effect service within 10 days brings this case under that express provision. We therefore consider the purpose of the 10-day requirement and note it is a procedural command to a government official. As such it is presumptively directory. Nevertheless, it is mandatory if the right it is designed to protect would generally be injured under a directory reading, or if there is negative language prohibiting further action in case of noncompliance. We find neither exception [*22] applies. We therefore hold that the clerk's duty to effect service within 10 days is directory, and thus the clerk's tardiness did not invalidate the judgment of the circuit court.

Our conclusion is not contrary to our recent decision in *Ramirez*. At issue in *Ramirez* was a statute permitting a defendant to be tried *in absentia* even though he was not present in open court when the trial date was set. Specifically, the statute provided that when the court sets the case for trial *in absentia* "the clerk *shall* send to the defendant, by certified mail at his last known address indicated on his bond slip, notice of the new date which has been set for trial.'" (Emphasis added.) *Ramirez, 214 Ill. 2d at 182*, quoting *725 ILCS 5/115-4.1(a)* (West 1992). The defendant argued he was entitled to a new trial because notice of his trial date was sent by regular mail, not certified mail. The State replied that the clerk's error was harmless because the defendant had constructive notice of the trial date through his counsel. We agreed with the defendant. We reasoned, first, that the word "shall" indicated that use of certified mail [*23] was a mandatory obligation of the clerk and that the statute included no exceptions. *Ramirez, 214 Ill. 2d at 182-83*. We then pointed out that the certified mail requirement was part of a larger legislative scheme. *Ramirez, 214 Ill. 2d at 183*. After describing the elements of that scheme, which included the requirement that the defendant be advised in open court that failure to appear at trial may result in trial *in absentia*, and the requirement that the State prove with substantial evidence that the defendant was willfully avoiding trial, we concluded that strict compliance with the certified mailing requirement was one of the "necessary statutory safeguards" designed to protect the important constitutional rights that are lost when a person is tried *in absentia*. *Ramirez, 214 Ill. 2d at 183-84*. We therefore rejected the State's position that the clerk's failure to use certified mail could be harmless in some cases. *Ramirez, 214 Ill. 2d at 184*. In other words, in *Ramirez* we applied the first exception to the general rule that procedural commands to government officials are directory because we found that [*24] a mandatory reading was necessary to adequately protect the important trial rights the certified mail requirement was designed to protect. In this case we reach the opposite conclusion regarding the relationship between the right to appeal and the 10-day service deadline.

The appellate court suggested that to read the 10-day deadline as directory is to leave the petitioner with a right but no remedy. *343 Ill. App. 3d at 921-22*. As noted above, there is no dispute the clerk had a statutory duty to serve petitioner on time. Therefore, petitioner had a right to timely service. In this case, however, petitioner requires no remedy because he was not prejudiced by the clerk's error. He filed his notice of appeal on time.

II. The Petitioner's Request for Cross-Relief

Petitioner requests cross-relief. He claims the circuit court erred when it summarily dismissed his postconviction petition as frivolous or patently without merit. We review this question *de novo*. *People v. Edwards, 197 Ill. 2d 239, 247, 757 N.E.2d 442, 258 Ill. Dec. 753 (2001)*. A postconviction petition is frivolous or patently without merit when its allegations, taken as true and liberally construed, fail to present the gist [*25] of a constitutional claim. *Edwards, 197 Ill. 2d at 244*. "The 'gist' standard is 'a low threshold.'" *Edwards, 197 Ill. 2d at 244*, quoting *People v. Gaultney, 174 Ill. 2d 410, 418, 675 N.E.2d 102, 221 Ill. Dec. 195 (1996)*.

Before this court, petitioner argues he met the "gist" standard by alleging that his appellate counsel was ineffective for failing to argue on direct appeal that the circuit court committed reversible error by admitting certain hearsay evidence at trial. Specifically, the court permitted Raleigh McNeal to testify that he told police officers at the scene of the shooting that petitioner was one of the shooters. The court also permitted Officer DuBose, one of the responding officers, to testify that Raleigh made an identification, either at the scene or at the hospital. DuBose did not state whom Raleigh identified.

As a threshold matter, the State points out petitioner's *pro se* petition does not allege the court erred by admitting hearsay through the testimony of Raleigh and DuBose. Rather, the petition only alleges that hearsay was admitted through the testimony of Detective John Murray. The State correctly argues that petitioner [*26] may not raise a claim for the first time on appeal from the dismissal of his petition. See *People v. Jones, 213 Ill. 2d 498, 821 N.E.2d 1093, 290*

*Ill. Dec. 519 (2004).* In response, petitioner points out that his petition alleged that the State's eyewitness testimony was unfairly bolstered by inadmissible hearsay. Petitioner argues that, if liberally construed, this allegation should not be limited to Murray's testimony and is therefore sufficient to raise the claim he asserts before this court.

For reasons that follow, it is clear the claim petitioner raises before this court lacks merit. We therefore choose to decide petitioner's request for cross-relief on the merits. We assume, without deciding, that the claim petitioner asserts through counsel was properly raised in his *pro se* petition.

A defendant has a constitutional right to effective assistance of counsel during his appeal as of right. *People v. Flores, 153 Ill. 2d 264, 277, 606 N.E.2d 1078, 180 Ill. Dec. 1 (1992).* To establish that appellate counsel was ineffective, petitioner must show both that counsel's performance was deficient and that counsel's error was prejudicial. *Flores, 153 Ill. 2d at 283,* [*27] citing *Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).* Counsel's error was prejudicial if there is a reasonable probability the result of the appeal would have been different but for the error. *Flores, 153 Ill. 2d at 283,* quoting *Strickland 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.*

Petitioner claims appellate counsel should have argued that Raleigh's out-of-court statement to police that defendant was one of the shooters was inadmissible hearsay. However, there is an exception to the hearsay rule for "spontaneous declarations." See *People v. Williams, 193 Ill. 2d 306, 352, 739 N.E.2d 455, 250 Ill. Dec. 692 (2000).* For a hearsay statement to be admissible under this exception, (1) there must have been an occurrence that was sufficiently startling to produce a spontaneous and unreflecting statement, (2) there must have been an absence of time between the occurrence and the statement for the declarant to fabricate the statement, and (3) the statement must relate to the circumstances of the occurrence. *Williams, 193 Ill. 2d at 352.* In applying these elements to determine [*28] whether a hearsay statement is admissible, a court should consider the totality of the circumstances, including "'the nature of the event, the mental and physical condition of the declarant, and the presence or absence of self-interest.'" *Williams, 193 Ill. 2d at 352,* quoting *People v. House, 141 Ill. 2d 323, 382, 566 N.E.2d 259, 152 Ill. Dec. 572 (1990).* A reviewing court will not disturb the trial court's decision regarding the admission of evidence at trial absent a clear abuse of discretion. *People v. Manning, 182 Ill. 2d 193, 211, 695 N.E.2d 423, 230 Ill. Dec. 933 (1998).*

The record shows Raleigh identified petitioner to police as one of the shooters mere minutes after being shot and after seeing that his brother had also been shot and appeared to be dead. These are sufficiently startling events. There is no indication in the record that Raleigh had a motive to falsely identify petitioner. Plainly, all three elements of the exception for spontaneous declarations are satisfied, and nothing in the totality of the circumstances indicates Raleigh's statement should not have been admitted. Accordingly, we find it extremely unlikely that a reviewing court would have concluded the trial [*29] court abused its discretion when it admitted Raleigh's statement at the scene identifying petitioner. Therefore, appellate counsel's failure to raise the issue was not an error and did not prejudice defendant.

It is questionable whether Officer DuBose's testimony that Raleigh identified the offenders, without testifying whom he identified, is hearsay at all. However, because we have concluded that the identification was clearly admissible as a spontaneous declaration, we need not address that question. For the same reason, we need not address the other grounds offered by the State for the admissibility of the identification.

In sum, petitioner's claim that he received ineffective assistance of appellate counsel is patently without merit, and his postconviction petition was properly dismissed.

CONCLUSION

For the foregoing reasons, we reverse the judgment of the appellate court remanding Robinson's postconviction petition. The judgment of the circuit court, dismissing the petition, is affirmed.

*Appellate court judgment reversed;*

*circuit court judgment affirmed.*

**CONCURBY:** KILBRIDE (In Part)

**DISSENTBY:** KILBRIDE (In Part)

**DISSENT:**

JUSTICE KILBRIDE, concurring in part and dissenting in part:  [*30]

I concur with the majority that petitioner, Emmanuel Robinson, is entitled to no remedy because the *de minimis* delay did not deprive him of the right to file a timely notice of appeal. I dissent, however, from the majority's review of the merits of petitioner's postconviction petition because such a review is premature.

To survive summary dismissal, a postconviction petition need only present "'the gist of a constitutional claim.'" *People v. Boclair, 202 Ill. 2d 89, 99-100, 789 N.E.2d 734, 273 Ill. Dec. 560,* quoting *People v. Gaultney, 174 Ill. 2d 410, 418, 675 N.E.2d 102, 221 Ill. Dec. 195 (1996).* As the majority acknowledges, "'the "gist" standard is "a low threshold."'" Slip op. at 12, quoting *People v. Edwards, 197 Ill. 2d 239, 244, 757 N.E.2d 442, 258 Ill. Dec. 753 (2001),* quoting *Gaultney, 174 Ill. 2d 410 at 418, 221 Ill. Dec. 195.* At this stage in the proceedings, the only issue is "whether the petition alleges constitutional deprivations." See *Boclair, 202 Ill. 2d at 102.*

In his postconviction petition, petitioner alleges, *inter alia,* that his trial counsel was ineffective:

(1) for not moving for a substitution of the judge who conducted a hearing [*31] on his motion to suppress confession;

(2) for not interviewing a State witness prior to trial and conducting any investigation to discover other witnesses that could have impeached the State witness' testimony;

(3) for failing to object to Detective John Murray's hearsay testimony concerning police reports prepared by other police personnel, and failing to impeach Detective Murray's testimony with other reports, and calling impeachment witnesses;

(4) for not objecting to testimony depicting petitioner as a "drug dealer," when there was no evidence to corroborate or substantiate that testimony;

(5) for failing to object to highly inflammatory and prejudicial testimony, or impeaching a witness with prior grand jury testimony;

(6) for withdrawing a motion to quash arrest and suppress evidence when the trial court had already granted a motion to suppress petitioner's inculpatory statement made during custodial interrogation in violation of petitioner's *fifth* and *sixth* amendment rights;

(7) for failing to secure an expert witness to testify concerning firearms;

(8) for failing to move for a suppression hearing based on suggestive identification procedures;

(9) for failing to object [*32] to in-court identification of petitioner;

(10) for failing to provide effective assistance of counsel at trial when counsel made no opening statement, objected only twice during the entire trial, cross-examined only two of the State's seven witnesses, and failed to preserve errors for appellate review.

Petitioner further alleges ineffective assistance of appellate counsel for withdrawing as counsel based on his assumption that if he pursued the appeal petitioner could receive a lengthier sentence.

Petitioner's postconviction petition certainly presents the "gist" of a constitutional claim to survive the first stage of the process for the adjudication of postconviction petitions. Rather than determining whether petitioner has presented the "gist" of a constitutional claim, however, the majority prematurely reviews the merits of those claims, when the circuit court has not done so.

The proper procedure at this point in the proceedings is to remand the cause to the circuit court for second-stage proceedings where counsel may be appointed to represent the petitioner, and counsel will then have an opportunity to amend the petition. *725 ILCS 5/122-1* [*33] *et seq.* (West 2000); *Boclair, 202 Ill. 2d at 100,* citing *People v. Watson, 187 Ill. 2d 448, 719 N.E.2d 719, 241 Ill. Dec. 590 (1999).* If the petition is not dismissed by motion of the State at the second stage of the postconviction process, then an evidentiary hearing on the merits of the petition will be conducted in the third stage of the postconviction proceedings. *725 ILCS 5/122-6* (West 2000); *Boclair, 202 Ill. 2d 89 at 100, 273 Ill. Dec. 560.*

Thus, I would affirm the appellate court judgment, albeit on different grounds, and remand this cause to the circuit

2005 Ill. LEXIS 1607, *

court for further proceedings. I therefore respectfully concur in part and dissent in part.